SOUTH PORTO RICO SUGAR COMPANY, Petitioner, v. DISTRICT COURT OF SAN JUAN, Respondent.

No. 1. Argued December 21, 1943.—Decided January 19, 1944.
Rehearing denied January 25, 1944.

*James R. Beverley, R. Castro Fernández*, and *José López Baralt* for petitioner. *M. Rodríguez Ramos, Acting Attorney General, A. F. Franco Cabrero, Deputy Attorney General*, and *Pablo Defendini*, for the Public Service Commission.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

In connection with the transportation and delivery (*arrastre y arrimo*) of sugar cane belonging to the *colonos*, the Public Service Commission has sought to impose on the sugar companies of Puerto Rico certain regulations of which petitioner herein and Antonio Roig, Sucrs., *S. en C.*, have complained in case No. 2. Both that case and the present one are certiorari proceedings to review decisions of the lower court denying a supersedeas which was sought in order to maintain the *status quo* pending the prosecution of the appeals taken by petitioners from the corresponding orders of the Public Service Commission. A preliminary writ was issued in both cases under Act No. 32 of 1943, the question involved being a matter of great public interest since many sugar mills in Puerto Rico are waiting for a determination of this case in order to liquidate the 1943 crop. By stipulation of the parties both proceedings were jointly heard.

Let us examine the facts. By Act No. 221 of May 12, 1942 (Laws of 1942, p. 1176), all sugar companies operating in Puerto Rico were declared public service companies and required to obtain franchises and to comply with the regulations issued by the Public Service Commission pursuant to said Act. On August 25, 1942, the Commission issued an order (Exhibit F) which is self-explanatory and which we transcribe below, as it has an important bearing on the determination of this case:

"In view of the fact that due to the lack of time, it is practically impossible to make investigations and to hold the corresponding hearings, the Public Service Commission proposes to establish in the provisional franchises granted in these cases, for the next grinding or crop year of 1933, the same conditions and terms as appear in Act No. 112

of 1937, as subsequently amended, with the exception of that part of §11, which deals with the deduction to cover expenses of bagging, freight, maritime insurance, and all other expenses in connection with the sale of sugar in the New York market. As to this matter, the Commission announces that it will hold hearings which will be opportunely set.

"The Public Service Commission suggests to the sugar centrals that on or before September 10, 1942, they write to this Commission stating their acquiescence or consent to this plan and waiving any possible right which they may have to a hearing on the matters of valuation, reasonable margin of profit, terms and conditions of the grinding contracts, and after the lapse of such period and the receipt of the proper communications, the Commission shall set the corresponding hearings *on the aforesaid expenses which are mentioned in §11 of the said Act No. 112 of 1937, as subsequently amended.* (Italics ours.)

"The grinding season should cover the period from December. 1, 1942, to June 30, 1943, acording to the requirements of each region; *Provided* that, if any of the parties concerned, whether they are centrals or *colonos,* should desire a modification of such period, they may apply accordingly to the Commission."

To that order the petitioner, in a letter signed by its President, replied as follows:

"We have been notified of your order and suggestion dated August 25, 1942, in which you advise that the Commission proposes to establish for the next grinding or crop year (crop of 1942–43) the same conditions and terms for liquidation by sugar mills to *colonos* as appear in Act No. 112, approved May 13, 1937, as amended by Act No. 213 approved May 13, 1938, with the exception of that part of §11 which deals with the deduction to cover expenses of bagging, freight, maritime insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the New York market, and that as to the matter of these deductions and expenses, the Commission plans to hold hearing to determine the actual amount of such expenses and costs. The companies manufacturing sugar in Puerto Rico are requested to waive for the crop of 1942–43 their rights to a determination by this Commission of a fair return to them under Act 221 of 1942, and to agree to liquidate under the terms of old Act 112 of 1937 as amended in 1938 with the exception

that the various deductions of expenses mentioned in §11 of said Act as amended will be allowed in full.

"The undersigned sugar company understands that this means that if the said waiver is filed, no other action will be taken by the Commission (except such order as may be issued after hearing on the matter of actual selling expenses deductible as above referred to) *with respect to the terms of colono contracts of this company* or with respect to the amount or amounts which may be earned by the company for the year ending June 30, 1943, nor with respect to sugar and molasses produced in that year, whenever marketed, and that the company will be free so far as this Commission is concerned, to operate during the 1942–43 crop and free with respect to sugar and molasses produced in that year, with no greater burdens, restrictions or limitations than would be imposed by Law No. 112 of 1937 as amended by Law No. 213 of 1938, were these laws still in force, except that the Commission will determine the actual selling expenses deductible as above referred to.

"If this understanding as to the effect of your proposed action is correct, this would serve to advise you that *if the Commission establishes and keeps in effect for the grinding year or crop year 1942–43 the same conditions and terms regarding liquidation to colonos as appear in Act No. 112 of 1937, as amended by Act No. 213 of 1938, with the exception of that portion of §11 thereof which deals with the deductions for expenses of bagging, freight, maritime insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the continent* (in regard to which the company claims and will claim the right to deduct all such actual expenses), South Porto Rico Sugar Company *is willing for the crop year 1942–43, as a matter of voluntary cooperation with this Commission, to conform, and will conform so far as it may legally do so, to the conditions and terms of said Act No. 112 of 1937 as amended by Act No. 213 of 1938, with the exception of that portion of §11 above described.* As to that part of §11 dealing with the deductions above mentioned, it is understood that such expenses as above mentioned, will be fixed at their actual figures and regardless of whether the sugar is actually sold in New York or at other ports of the United States, provided, however, that if any more favorable terms and conditions are granted or permitted to any other sugar company in Puerto Rico, we shall be required to conform only to such more favorable terms and conditions.

"By submitting this waiver of a valuation and fixing of a fair return for the 1942–43 crop, the undersigned company does so with the understanding that this will not constitute a precedent for any future waivers.

"By advising this Commission as set forth herein, and by hereafter conforming to the terms and conditions of Act No. 112 of 1937 as amended by Act No. 213 of 1938 *to the extent above. stated,* the undersigned company does not waive any of the reservations made in its application for a provisional franchise to this Commission but reasserts them, and it reserves the right to contest any order or finding of the Commission with which the company may not agree which may be issued with respect to deductions for expenses of bagging, freight, maritime insurance, commissions, insular excises and all other expenses in connection with the sale of sugar in the United States, *or any other order of this Commission which may be issued with respect to the 1942–43 crop inconsistent with the terms of this waiver.*

"It is also understood that by making this offer of voluntary cooperation with the Commission for the crop year 1942–43, the company does not concede that operation in accordance with the terms of this offer (i. e., under the terms and provisions of Law 112 of 1937 as amended with deduction of actual selling expenses as above set out), will give a fair return to the company on its business.' (Italics ours.)

Antonio Roig Sucrs., *S. en C.,* also accepted the order of the Commission in similar terms to those above. transcribed.

On October 1, 1942, the Commission published the following notice, the pertinent part of which we copy as follows:

"NOTICE OF PUBLIC HEARING.—Case No. J–6602.

"The Public Service Commission has decided to hold the public hearings in connection with Act No. 221 of 1942 on the dates which are stated below, in order to verify the expenses of each of the centrals with respect to bagging, freight, maritime insurance, commissions, and all other expenses connected with the sale of sugar in the New York market, with a view to determining what sums of money may be deducted by the central to the *colonos* on account of such expenses under §11 of Act No. 112 of 1937, as amended by Act No. 213 of 1938.

"At said hearings evidence shall be introduced regarding. the amounts which each and all of the centrals must pay to the *colonos*

on account of the transportation and delivery of the cane *under Section 7 of Act No. 112 of 1937, as amended by Act No. 113 of 1938,* and an inquiry shall also be made upon the methods used for the transportation and delivery of the cane.

> " . . . . . . . .
> "October 20, 1942
> "Central El Ejemplo
> "Central Roig
> " . . . . . . . .
> "October 26, 1942
> "Central Guánica
> " . . . . . . ."

The hearings were held on the days set. On December 23, 1942, the Commission, without having set or held any hearing subsequent to those pertaining to October 20 and 26, approved the regulations regarding transportation and delivery of cane (*arrastre y arrimo*) (Exhibits A, B, C). The petitioners then moved for a reconsideration and modification of said regulations and the Public Service Commission, *without setting or holding any hearing,* rendered the order of February 24, 1943 (Exhibit D), whereby it amended §§2 and 3 of the Regulations regarding transportation and delivery of cane and §§6 and 11 of the General Regulations. Thereupon the petitioners again requested a reconsideration and the Commission, without setting or holding any hearing, issued the order of April 12, 1943 (Exhibit E), whereby it further amended §2 of the Regulations regarding transportation and delivery of cane. On April 22, 1943, the petitioners appealed to the District Court of San Juan and attacked the validity of said regulations which they sought to annul. On May 12, 1943, the petitioners filed in the lower court a first motion for a supersedeas which was denied, as the Commission had not yet sent up the record of the case. Upon the filing of said record, the petitioners presented a second motion for a supersedeas, and after a hearing, the lower court rendered its order of November 29, 1943, against which

this certiorari proceeding is directed and the pertinent part of which we transcribe below:

"WHEREAS, in our judgment, this case involves 'an order of the Commission, establishing fixing, changing, or modifying prices, rates, or charges for the public service of transportation and delivery of cane.'

"WHEREAS, it has not been shown or proved to us by the appellant, nor by the evidence appearing of record, that said order is confiscatory or that in effect it deprives the appellant of its property without due process of law, for although it is true that such an allegation is made, the party alleging a deprivation of its property must nevertheless show of what property it has been deprived (*American Railroad Co.* v. *Public Service Commission*, 62 P.R.R. 340) and this the appellant did not even attempt to show, nor why the order appealed from is confiscatory.

"WHEREAS, the supersedeas sought herein is a statutory remedy and can only be obtained after a strict compliance with all the required conditions.

"WHEREAS, as alleged by the appellee, an order of this court staying the effects of the order or orders appealed from could only operate prospectively and the grinding season for 1943 having terminated, such an order or stay would be academic and lack any practical purpose.

"WHEREAS, even conceding that the order appealed from is not of the kind above stated, we think that we would be exercising our discretion more wisely by refusing to issue the supersedeas sought.

"THEREFORE, the 'Second Motion for a Supersedeas' filed by the appellant is hereby denied."

Although the petitioners have asked us to consider and decide the case on its merits, that is, to determine the validity or the regulations regarding transportation and delivery of cane, we are of the opinion that we should not exercise our jurisdiction in these cases to that extent, since the District Court of San Juan must, in the first instance, hear the appeals taken and the regular legal procedure should be followed. The only thing to be decided by us at this time is whether or not the lower court erred in denying the supersedeas sought in these cases.

 Section 80 of the Public Service Act of 1917 (vol. II, p. 432), as amended by Act N. 21 of 1935 (Laws of 1935, p. 180), reads as follows:

"No appeal from any order of the Commission shall in any case operate as a supersedeas of the order appealed from, unless the aforesaid proper court shall, by an interlocutory order, make said appeal as a supersedeas, by the filing of a bond and after a hearing to that effect; And, provided, however, That in those cases in which the appeal is taken from an order of the Commission establishing, fixing, changing, or altering prices, rates, or charges of any public service, the appeal shall not arrest the effects of the order of the Public Service Commission by operating as a supersedeas unless the public-service company affected shows cause before the court, upon the corresponding hearing with the appearance of the Commission, that the order of the Commission is confiscatory and that its effects would deprive such public-service company of its property without due process of law; and if these facts are established before said court, the court may grant an order based upon conclusions of fact and of law suspending the effects of the order of the Commission; but it shall previously require the public-service company to file a bond in favor of The People of Puerto Rico, for the benefit of all parties prejudiced by the failure of such company to comply with the order appealed from during the period of such supersedeas, and in such sum and under such conditions as the court may direct; such bond shall be conditioned for the repayment to all parties aggrieved by the supersedeas of the order of the Commission, of any sum the public-service company may have collected during the period of the suspension in excess of what the Public Service Commission may have ordered, in case such order of the Commission is finally affirmed; And, provided, further, That for the purposes of this supersedeas, the evidence submitted for the consideration of the court shall be that which appears from the record as introduced and submitted for the consideration of the Public Service Commission; and no other evidence which has not been previously submitted to the said Commission shall be admitted."

According to the provisions of that Section, where an appeal is taken from an order of the Commission "establishing, fixing, changing, or altering prices, rates or charges of any public service," no supersedeas shall be granted unless

such public service company shows that "the order is confiscatory and that its effects would deprive such public service company of its property without due process of law." The lower court held that the order of the Commission was of the kind already stated and that the appellant failed to prove that the same was confiscatory. The appellant assigned this as error. It is not necessary for us to determine whether said order establishes, fixes, changes, or alters prices, rates, or charges, since we hold that, whatever its effect, the lower court erred in not granting the supersedeas.

Assuming that the order in question falls within the general provisions of §80, *supra*, application should be made of the decision in the case of *White Star Bus Line, Inc.* v. *District Court*, 52 P.R.R. 809, where it was said:

". . . In granting or refusing a supersedeas to take effect upon approval of the bond, the district judge has at least as much discretion as he would exercise in granting or refusing an injunction *pendente lite* in a suit to restrain the enforcement of an order made by the commission. 'To warrant an injunction *pendente lite* it must appear *that there is a reasonable probability that complainant will prevail upon final hearing.*' . . .

" * . * * . * * * *

". . . For the purposes of this opinion it may be conceded that in a case of this kind and in the absence of any other good cause shown, some showing as to irreparable injury should be required as a condition precedent to the granting of an interlocutory order of supersedeas." (Italics ours.)

So that under the general provisions of §80, *supra*, there must be "some showing as to irreparable injury" and there should be required, not what is required in cases of alterations of prices, rates, or charges, that is, proof that the order is confiscatory and deprives the petitioners of their property without due process of law, but a showing that there is a reasonable probability that the petitioners will prevail upon final hearing of the case on appeal. However, the final provisions of §80, *supra*, prescribe that—

"*And, provided, further,* That for the purposes of this supersedeas, the evidence submitted for the consideration of the court shall be that which appears from the record as introduced and submitted for the consideration of the Public Service Commission; and no other evidence which has not been previously submitted to the said Commission shall be admitted."

Did the petitioners have an opportunity to submit any evidence to the Commission? We have already seen that the Commission on August 25, 1942, issued an order, *supra,* suggesting to the centrals the advisability of their waiving their right to a hearing on the matter of the valuation of their properties and the determination of a reasonable margin of profit, and of consenting to a plan for establishing, for the grinding of crop year of 1943, the same conditions and terms which appear in Act No. 112 of 1937, as amended, *with the sole exception* of that part of §11 which deals with the deduction for *selling or marketing expenses.* The petitioners consented to a waiver of their right to the holding of hearings, but this was solely on the basis that the contracts for transportation and delivery of cane would continue to be governed by Act No. 112 of 1937. The last paragraph of the notice for holding the hearings, *supra,* clearly shows that the Commission was not summoning the parties to hear them in order to fix the terms of said contracts under Act No. 221 of 1942, but only to determine the amounts which the centrals must pay to the *colonos* in accordance with Act No. 112 of 1937. Thus we find that in the stenographic record of the hearing held on October 26, 1942, the following appears:

"On October 26, 1942, this case was called for the holding of a public hearing relative to the expenses of bagging, freight, maritime insurance, and all other expenses connected with the sale of sugar. . ."

The Commission, however, argues that at said hearings the matter of transportation and delivery of cane was am-

ply discussed. It is true that the Commission put several questions to a witness for petitioner South Porto Rico Sugar Co., regarding said matter, and that several witnesses for petitioner Antonio Roig Sucrs., *S. en C.,* were also similarly questioned; but such testimony must be considered in connection with the purpose for which the hearing had been set, that is, to determine whether the centrals were complying with Act No. 112 of 1937 with respect to the transportation and delivery of cane. Thus we see that the witness Adalberto Roig, managing parties of Antonio Roig, Sucrs., several times insisted that the hearing was not held in order to cover that matter. For example, the following statement of Mr. Roig appears on page 50 of the Transcript of Evidence:

"As I am not a lawyer, perhaps I did not state the matter correctly, but I wish to say that we will object to this question being considered at this hearing."

And the Chairman of the Commission said:

"We will hear the evidence and reserve to them the objection and exception saving their rights."

See also pages 120, 121, 160, and 206.

The record of these cases fails to show that the questions raised regarding the transportation and delivery of cane were asked in connection with Act No. 221 of 1942 and not in connection with the provisions of Act No. 112 of 1937, as had been agreed by the petitioner and the Commission. As a result of said hearing, regulations were issued regarding the transportation and delivery of cane which were later amended by subsequent orders of the Commission, *supra,* without setting or holding any hearing in connection with said amendments. Conceding, without holding, that the original order was valid, could it be held that there is a "reasonable probability that petitioners will prevail" in their appeals before the lower court? The Commission itself in its brief, at page 11, makes the following admission:

"Subsequently, in view of numerous petitions for modification received from the centrals and *colonos,* the Commission again adopted some amendments to the regulations regarding the transportation and delivery of cane by an order of April 12, 1943. *We admit that those amendments were adopted without the holding of a public hearing,* although in adopting them the Commission relied exclusively on the evidence introduced and the investigation made at the hearings which served as a basis for the issuance of the original regulations on December 23, 1942, From a careful examination of said amendments it will be seen that they do not substantially alter the conditions established by the previous regulations, *although we admit that some phases thereof could have a slight adverse effect upon the petitioner.*" (Italics ours.)

In our judgment, the lower court may declare those acts of the Commission arbitrary and unreasonable, and that the regulations issued in consequence thereof were made without due process of law. *Luce & Co.* v. *Minimum Wage Board,* 62 D.P.R. 431; *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n* (1936), 301 U. S. 292.

Confirming the holding made in the case of *Morgan* v. *United States,* 298 U. S. 468, which was cited by this court in *Luce & Co.* case, *supra,* the Federal Supreme Court in *Ohio Bell Tel. Co., supra,* speaking throught Mr. Justice Cardozo said:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. *West Ohio Gas Co.* v. *Public Utilities Comm'n (No. 1), supra,* p. 70; *West Ohio Gas Co.* v. *Public Utilities Comm'n (No. 2),* 294 U. S. 79; *Los Angeles Gas & Electric Corp.* v. *Railroad Commission,* 289 U. S. 287, 304. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the *'inexorable safeguard' (St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 73) *of a fair and open hearing be maintained in its integrity. Morgan* v. *United States,*

298 U. S. 468, 480, 481; *Interstate Commerce Comm'n* v. *Louisville & N. R. Co., supra.* *The right to such a hearing is one of 'the rudiments of fair play'* (*Chicago, M. & St. P. Ry. Co.* v. *Polt*, 232 U. S 165, 168) *assured to every litigant by the Fourteenth Amendment as a minimal requirement.* *West Ohio Gas Co.* v. *Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris Co.* v. *Hill*, 281 U. S. 673, 682. Cf. *Norwegian Nitrogen Co.* v. *United States, supra.* There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, *when that minimal requirement has been neglected or ignored."* (Italics ours.)

We are of the opinion that, even though, as held by the lower court, the regulations should be considered as alterations of rates, prices, etc., there was a *prima facie* showing of the confiscation referred to in §80, *supra.* Now, since the final provision of said Section is applicable, it would be absurd to require the petitioners to make "some showing as to irreparable injury" when by the very §80, the petitioners are prohibited from introducing any other evidence than that which has been submitted to the Commission; for, according to the facts of these cases the petitioners had no opportunity to introduce any evidence, especially concerning the amendments subsequently made by the Commission to the regulations without holding any new hearings with the appearance of the petitioners.

It is true that §80, *supra,* is clear in the sense that the issuance of a supersedeas in these cases is a matter which rests in the sound discretion of the lower court. However, under the attendant circumstances of these cases, we are of the opinion that the lower court abused the discretion conferred upon it by said Section.

The order rendered by the lower court on November 29, 1943, must be reversed and the cases remanded for a new hearing in which the amount of the bond must be fixed and the order of supersedeas issued.

Mr. Justice Snyder did not participate herein.

ON MOTION FOR RECONSIDERATION
January 25, 1944

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The Public Service Commission has asked us to reconsider and set aside the judgment rendered in this case on January 19, 1944, it alleges four principal grounds which we will state and decide in the same order in which they have been raised:

1. That this court only took into consideration the record of the hearing held in connection with the petitioner, thus disregarding the records of the hearings relating to the other sugar companies of the Island.

According to the call or notice for public hearing issued by the Commission on October 1, 1942, a specific date was set for hearing the petitioner, to wit, October 26, 1942. Other different dates were set for the respective hearings of the other centrals. There is no showing in said call that all the centrals would be heard on a single day or on successive days when they would be bound to appear. This being so, the petitioner was not bound to be present at any other day than the one for which it had been summoned.

Our former judgment did not have the effect of denying to the Commission the power to make a general investigation of the prevailing conditions among all the sugar companies of the Island so as to determine and fix the scope of adequate or reasonable regulations to which all the companies might be subjected. It is only logical that such an inquiry should be made. Our judgment was confined solely and exclusively to a determination of the procedural question of whether or not the petitioner had an opportunity to be heard in connection with the subject matter of the regulations regarding which it had made no previous agreement with the Commission, as it more fully appears from our former opinion.

2. That the motions for reconsideration filed by the petitioner did not require the holding of hearings, and that the words used by the Commission in its brief to the effect that the amendments made to the regulations were "slightly adverse to the petitioner" should not be interpreted in the sense that said amendments were prejudicial to the petitioner.

If the regulations had not been further amended by virtue of the motions for reconsideration filed by the petitioner, and said motions had been denied, it is obvious, of course, that no new hearing was required. However, if, as admitted by the Commission, said regulations were amended, and the petitioner maintains that this was done to its prejudice and that the amendments were not slightly adverse as claimed by the Commission, it is equally obvious that the hearings constituted a prerequisite to said further amendments.

3. That assuming that the irregularities concerning the lack of hearings existed the same were corrected and cured by the *subsequent action* of the Commission, that is, by the holding of a hearing on May 13, 1943, after notice to the centrals and approval of other regulations. The Commission admits that "although it is true that the documents relating to that action neither form nor could form part of the record pertaining to this proceeding, inasmuch as there were involved acts performed subsequent to the date of the appeal taken by the petitioner from the regulations adopted before that date, *this Hon. Court could and should take judicial notice of the said action.*" (Italics ours.)

We think that a mere reading of the third ground above set forth is sufficient to show that it is untenable. If the record which the lower court had before it and which is the same one that was submitted to us by virtue of the writ of certiorari did not set forth, nor could it set forth, the acts referred to by the Commission, how could the same serve as a basis for determining the propriety of the supersedeas sought? Neither the lower court nor this court could take judicial notice that the Commission issued a new notice for a hearing which was served on the petitioner and on the

other centrals of the Island, and that said hearing was, held on a date subsequent to the institution of the present certiorari proceeding.

But even conceding that all that actually took place, and that the regulations had been further amended, we must·assume that said regulations operate prospectively from the date of their approval, June 17, 1943, and therefore the former regulations as amended from December 23, 1942, to June 17, 1943 may have prejudicially affected the petitioner, as the latter alleges and seeks to establish before the lower court.

■ That it is not true, as maintained by the Commission, that the regulations preceding the one approved May 17, 1943, have caused no prejudice to the petitioner, and that therefore the appeal taken in the present case is academic, is shown by the fact, alleged by the petitioner and admitted by the Commission, that there is now pending before the District Court of Ponce a criminal prosecution against the vice-president of the petitioner for failure of the latter to comply with said regulations. One of the purposes of the supersedeas requested in this case is precisely to obtain a stay of the effects of said regulations in order to avoid the criminal proceedings to which the petitioner might be subjected pending the prosecution and determination of the appeal taken to the lower court. We have held that the supersedeas should have been granted; but this does not mean that if the appeal is finally dismissed, it would preclude the continuation of the pending prosecutions or the institution of new ones against the petitioner for failure to comply with said regulations. Meanwhile, however, the *status quo* must be maintained. Whether petitioner's appeal is academic, as claimed by the Commission, because the irregularities alleged by the petitioner have been corrected, is a question to be decided by the lower court after hearing the case on the merits and not by this court in this incidental proceeding.

■ 4. That the phrase used in our opinion to the effect that "there was a *prima facie* showing of the confiscation referred to in §80, *supra,*" in connection with the regulations issued, is not justified, for, the evidence in the case not having been submitted to this court, we were not in a position to form an opinion as to the confiscatory character of the regulations.

The scope of the above-mentioned phrase should be understood as limited to what we were expressly deciding in this case, that is that under the facts appearing of record, the lower court might declare the acts of the Commission arbitrary and unreasonable, and that the regulations issued in consequence thereof were made without due process of law. It is an elementary principle of constitutional law that where action is taken without due process of law this renders the act confiscatory. It was in that sense that we used said phrase, for in our former opinion we expressly stated that we were not deciding the case on the merits nor determining the validity of the regulations; and we confined ourselves to a consideration and determination of the case solely as to the propriety of the supersedeas requested by the petitioner.

Regarding this phase of the motion for reconsideration, we have no hesitancy in stating anew that we have not entered into a consideration of the merits of the question of whether the regulations issued by the Commission are reasonable or confiscatory, which question must be decided in the first instance by the lower court after hearing the appeal taken in the case. What we have definitely held is that when exercising the broad powers granted by Act No. 221 of 1942 to the Public Service Commission for the regulation of the sugar industry of Puerto Rico, the least that can be demanded from it is a strict compliance with the due process of law secured to all persons, whether natural or artificial, by our Organic Act.

The motion for reconsideration must be denied.

Mr. Justice Snyder did not participate herein.