## Somerville v. Carmel Corp.

536

*Nathan Agran*, for petitioner.
*Garland Cherry*, for respondent.

HERMAN, J., October 17, 1966.—The case before us arises out of the alleged failure of Charles W. Huber, president of Carmel Corporation, to obey a subpoena issued by the Pennsylvania Human Relations Commission commanding him to appear before the commission; to bring certain records; and to testify concerning the complaint of petitioners that they, because of their race, were denied rental of an apartment owned and operated by respondent.

The Pennsylvania Human Relations Commission, hereinafter called "Commission", has filed a petition in this court alleging, inter alia, that: (1) on February 8, 1965, Lonnie and Yvonne Somerville, husband and wife, Negroes, filed a complaint with the commission charging that, because of their race, they were denied the rental of an apartment by Carmel Corporation, the owner and operator of said apartment house; (2) that Charles W. Huber, president and principal stockholder of Carmel Corporation, sets and determines policy of the corporation, including the policy of refusing to rent to Negroes; (3) that after investigation and unsuccessful efforts to adjust the complaint, the commission directed that a public hearing be held and delegated the duty of conducting the public hearing to a panel of

three Commissioners;[1] namely, Joseph X. Yaffe, Esquire (to preside), Samuel H. Daroff, and Matthew M. McCloskey, III; (4) that due notice of such hearing was given to all parties, including Charles W. Huber; (5) that the commission, by Matthew H. McCloskey, III, issued a subpoena to Huber commanding him to appear before the Pennsylvania Human Relations Commission on April 22, 1965, at 10:00 a.m., in Media, Pa., and to bring with him certain records of the Carmel Corporation; (6) that the said subpoena was duly served on Huber; (7) that at the time and place set for the hearing, Huber appeared with his attorney and refused to testify or produce his records for the alleged reasons that a quorum of the commission was not present and that the subpoena was not properly served; (8) that, thereupon, in spite of the direction of the chairman, Mr. Huber refused to take the witness stand or to produce his records, and left the hearing. A rule was granted upon Charles W. Huber to show cause why he should not obey the subpoena and appear before the three hearing commissioners, produce the records and testify.

Respondent filed an answer denying many of the allegations contained in the petition, but as far as the present inquiry is concerned, has admitted the salient facts. It has been admitted specifically that Charles W. Huber refused to testify or produce the records at a hearing where less than six commissioners sat. Respondent has abandoned the position that the subpoena was not properly served. The "Wherefore" clause in defendant's answer to the petition frames the issue before us; viz:

"WHEREFORE, the Respondent, Carmel Corp., respectfully requests the Court to hold as a matter of law

---

[1] The human relations commission consists of 11 members, six of whom "constitute a quorum for transacting business": Act of October 27, 1955, P. L. 744, as amended, 43 PS §956.

that the statutory provisions of the Human Relations Act require that meetings before the Commission be held before a duly constituted quorum as defined in the Act".

In determining this issue, we must first look to the statute law and the regulations under which the Pennsylvania Human Relations Commission functions.

The Pennsylvania Fair Employment Practice Act of October 27, 1955, P. L. 744, as amended by the Pennsylvania Human Relations Act of February 28, 1961, P. L. 47, 43 PS §951 et seq. (hereinafter referred to as "the Act"), provides, in pertinent part, as follows:

"Section 7: . . . The Commission shall have the following powers and duties: . . .

"(d) To adopt, promulgate, amend and rescind rules and regulations to effectuate the policies and provisions of this act. . . .

"(g) To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take testimony of any person under oath or affirmation and, in connection therewith, to require the production for examination of any books and papers relating to any matter under investigation where a complaint has been properly filed before the Commission. The Commission may make rules as to the issuance of subpoenas by individual commissioners. . . ."

Section 9 of the act deals with procedure and provides, in pertinent part, that a respondent, after a complaint has been filed and he has received notice thereof, may be required "to answer the charges of such complaint *at a hearing before the Commission* at a time and place to be specified in such notice", and, further, that "*the case* in support of the complaint *shall be presented before the Commission* by one of its attorneys or agents".[2]

---

[2] Emphasis ours throughout unless otherwise indicated.

This same section 9 provides that "The Commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder".

On November 26, 1963, the commission adopted regulations to become effective January 1, 1964. Among these regulations, there appears section 105.03, entitled: Who May Conduct Public Hearings; Section 105.04, entitled: Hearing Commissioners; and Section 105.14, entitled: Powers and Duties of Hearing Commissioners, all of which pertain to the matter before us, if valid.[3]

It is well settled that, unless the statute creating the administrative agency provides otherwise, the hearing required before administrative action is taken need not be before the administrative body itself, but may be before one or more of the members of the body or be-

---

[3] "Section 105.03 WHO MAY CONDUCT PUBLIC HEARINGS. Public hearings shall be open to the public and shall be conducted by the Commission or by one or more Commissioners acting as Hearing Commissioners in accordance with Section 105.04 hereof.

"Section 105.04 HEARING COMMISSIONERS. The Commission may delegate the duty of conducting a public hearing to one or more members of the Commission to act as Hearing Commissioners, one of whom shall be named as the presiding member: Provided, however, that any Final Order or Adjudication in any case in which a public hearing has been conducted by Hearing Commissioners shall be made by at least a quorum of the Commission.

"Section 105.14 POWERS AND DUTIES OF HEARING COMMISSIONERS. The Hearing Commissioners shall have full authority to control the procedure of hearings; to administer oaths and affirmations; to admit or exclude testimony or other evidence; to rule upon all motions and objections; to call and examine witnesses; to compel the appearance of witnesses and the production of papers or documents and introduce the same into the record of the proceedings; and to petition the appropriate Court for citation for contempt where any person is charged with contumacy or refusal to obey a subpoena issued by the Commissioner".

fore an examiner appointed to take testimony. See 1 P. L. Encyc., Administrative Law and Procedure §39 (1957) ; 73 C. J. S., Public Administrative Bodies and Procedure §135 (1951), and cases there cited. It is stated in 2 Am. Jur. 2d, Administrative Law §407 (1962) :

"While particular statutes may create certain restrictions, it is generally regarded that the fact that the power to decide resides solely in the administrative agency vested by statute with such power does not preclude a delegation of the power to hold a hearing and conduct the proceedings on the basis of which the decision will be made. Neither does due process of law or the concept of a fair or full hearing require that the actual taking of testimony be before the same officers as are to determine the matter involved. *Whether or not expressly authorized by statute, it is permissible, and does not render a hearing inadequate or unlawful, for an administrative agency to employ the panel method of hearing in which one or more of the members of the agency takes the testimony in the matter before the agency,* or to employ other persons, such as an examiner, investigator, or referee, to obtain the evidence and conduct the hearings, and make a report to the agency upon which the agency makes its decision. *Such procedure is a practical necessity*".

In this connection, it is recognized that to "hear" relates not to physical presence at the taking of evidence, but to certain procedural minimums to ensure an informed judgment by the one who has the responsibility of making the final decision and order: Morgan v. United States, 298 U. S. 468 (1936) ; Foley Brothers, Inc. v. Commonwealth, 400 Pa. 584 (1960).

We do not, as does respondent, read into the act the requirement that, since six members of the commission are a quorum for the transacting of business, that, therefore, six members must sit in all hearings.

The act, in section 7, says only that the commission has power "to hold hearings" without indicating in any way the number of commissioners who shall take testimony, and the phrase "at a hearing before the Commission", found in section 9 of the act dealing with procedure and on which respondent principally relies, when considered along with the first sentence of the last paragraph of that section, "The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder", indicates to us a clear legislative intent that by proper regulation, the commission could provide for the taking of testimony by less than a quorum of the commission. In determining the intent of the legislature the entire act must be considered, not an isolated section: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551.

The commission did, by proper procedure, adopt regulations to accomplish this purpose. Rules and regulations of an administrative body will be upheld where they are within the statutory authority of the agency and are reasonable. We believe that the rules here in issue were clearly within the statutory authority and reasonably directed to the accomplishment of the purposes of the statute under which they were made. See Commonwealth v. DiMeglio, 385 Pa. 119 (1956); 2 Am. Jur. 2d, Administrative Law §303 (1962).

It is our judgment that the rule granted in this matter on June 4, 1965, directing Charles W. Huber to appear before the three hearing examiners, produce records and give testimony, should be made absolute and we, therefore, make the following

ORDER

And now, October 17, 1966, the rule granted on June 4, 1965, upon Charles W. Huber is hereby made absolute, and said Charles W. Huber is directed, when duly

notified by the commission, to appear before three hearing. commissioners, produce the records named in the subpoena duces tecum and give testimony touching the issues involved in the case of Lonnie Somerville and Yvonne Somerville, his wife, v. Carmel Corp., in its own right and doing business as Brooke Hall Park Apartments and Beulah Rambeau.