## FLORIDA PROCESSING CO. v. DADE COUNTY, et al.

Nos. 66-C-11958 and 66-L-4807.

Circuit Court, Dade County.

January 11, 1968.

Richard Kanner, Aaron M. Kanner and W. G. Ward, all of Miami, for petitioner.

Thomas C. Britton, County Attorney, Louis Schneiderman, Assistant County Attorney, for respondents.

HAROLD B. SPAET, Circuit Judge.

The within causes, the first seeking injunctive relief and the second being a petition for writ of certiorari were tried together. The plaintiff in chancery suit no. 66-C-11958 sought injunctive relief which was granted on condition that petition for certiorari be filed promptly, which was done in case no. 66-L-4807.

Florida Processing Company will hereafter be referred to as the petitioner, and Metropolitan Dade County and the others named in 66-L-4807 will be referred to as the respondents. The facts without substantial dispute are as follows —

On September 29, 1966 Paul William Leach, the pollution control officer for Dade County issued and served upon the petitioner an order commanding it to cease and desist the operation of a plant that had been in continuous operation for upwards of eight years, on the grounds that the operation was creating a health hazard by the emission of noxious odors. Petitioner took an appeal from the cease and desist order to the pollution control board as provided in the Pollution Control Ordinance. Hearings before the board were held on October 5th, October 20th and November 4th, 1966. The board voted at the last hearing to uphold the cease and desist order issued by the pollution control officer, and the filing of these suits ensued.

It is alleged in 66-C-11958, and not denied, and therefore admitted, that two members of the board who voted to sustain the cease and desist order were not present at some of the hearings and, therefore, did not hear the testimony upon which their findings and conclusions were based.

It was likewise alleged and not denied, and therefore admitted, that the county attorney, who was present at the three hearings held by the pollution control board, acted in a dual capacity, representing the pollution control officer as a "prosecutor", and the board as "judges".

After having carefully read the lengthy and excellent briefs submitted by both sides, and making considerable independent research, I am of the opinion that the proceedings before the pollution control board did not follow the essential requirements of the law.

As the use of administrative boards becomes more and more common, it seems to me that the constitutional protection of a fair hearing must be zealously guarded. When administrative boards were used for minor ministerial matters, petty licenses granted and refused, prices regulated, etc., the need for safeguards may not have been as great, but where, as here, the very substantial rights of the residents in the area and the life or death of petitioner's business are involved, the court must scrutinize the quasi-judicial proceedings of the board with care.

To me, it seems a mockery to call a hearing a "fair trial" when the one who decides has not even *seen* the witnesses.

The Supreme Court of Florida in the January term 1967 approved, unanimously, the Florida Standard Jury Instructions, and in those Instructions, 2.2, relating to the believability of witnesses the court instructed judges throughout the state to advise jurors as follows —

> "In determining the believability of any witness and the weight to be given his testimony, you may properly consider the demeanor of the witness while testifying; his frankness or lack of frankness; his intelligence . . ."

I am at a loss to know how a non-attending member who votes on the ultimate issue can have properly conveyed to him the demeanor of a witness while testifying or his frankness or lack of it.

The courts have recognized in many cases the importance of confrontation. Buchsbaum & Co. v. Federal Trade Commission (C.C.A.7), 153 Fed.2d 85; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 55 S.Ct. 724, 81 L.Ed. 1093; Smith v. Dental Products Co. (C.C.A.7), 168 Fed.2d 516.

In the Buchsbaum case a trial examiner died, and his successor examiner made his recommendations based on the testimony taken before the deceased examiner as well as other testimony taken before the successor examiner. In setting aside a cease and desist order the Circuit Court of Appeals said at page 87 —

> The elementary principle underlying all trials of whatever nature seems to be that the rule of confrontation shall be applied where the witnesses are available for that purpose.

The court went on to say at page 88 —

> Respondent insists that there is no constitutional right to the benefit of demeanor evidence; that it is no more than a secondary and dispensable advantage of the rule of confrontation. In support

of this contention it relies upon Wigmore on Evidence (3rd Ed.) §§1395, 1396. These sections do not support that contention. That author states that the process of confrontation has two purposes. The first is to secure for the opponent the opportunity of cross-examination, the second is to have the personal appearance of the witness before the judge and jury, from which they are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying. In §1396 the author states: "Nevertheless, the secondary advantage, incidentally, obtained for the tribunal by the witness' presence before it — the demeanor-evidence — is an advantage to be insisted upon whenever it can be had. No one has doubted that it is highly desirable, if only it is available." The author concludes that the rule may be dispensed with in cases of unavailability. Here there is no claim by anyone that the witnesses were unavailable, and counsel has cited no decision of our Supreme Court which in any way abrogates the ruling in the Ohio Bell Telephone Company case, and the Morgan case, supra, both of which cases hold that a failure in this respect would amount to a failure of due process. So long as these cases stand, neither we nor the Commission can ignore them.

In the Smith case, supra, the rule found in headnote 6 is as follows — " 'Due process of law' contemplates right of parties to have a decision from agency having jurisdiction upon the merits upon testimony submitted *whom trial tribunal has seen and heard."* (Italics added.)

In the Smith case a special master died after taking all testimony and the district court made its ruling on the transcribed testimony. The Circuit Court of Appeals decided that due process had been violated.

Respondent would have the court find that petitioner has waived the right to confrontation and is estopped from asserting its constitutional rights and safeguards. To the court, it seems that rights as substantial as these should not be lightly denied on the basis of waiver or estoppel, especially where no prejudice to the adverse party is shown.

The court certainly sympathizes with the great demands that are made upon the businessmen who serve on these commissions without compensation. But as administrative boards become more and more the dispensers of justice in the community, and as the power of life and death in many instances is given to them as to community and property rights, it is essential that the testimony be by confrontation so that its weight and believability can be fairly determined.

This court likewise feels that where such serious rights are involved the dual capacity of the county attorney is a serious departure from the essential requirements of the law.

In an excellent treatise by Chamberlain, Dowling and Hays issued by the Commonwealth Fund at Columbia University (1942) in speaking of this very question in regard to a hearing before a trial examiner, which is comparable to the pollution control board's position in these causes, the authors said, at page 39 —

> The trial examiner should be independent of the legal staff of the agency, which has advised that the complaint should issue, which has prepared the complaint, and which conducts the case for the government at the hearing, thus separating as far as possible the prosecuting and the judicial functions of the agency. In conducting hearings and in the preparation of his reports the trial examiner should be treated as carrying on a judicial function and should have no other relation with the counsel for the government than with the counsel for private parties. He should be influenced by the law officers of the agency only as he would be influenced by the arguments of any lawyer and should deal with them during the hearing in the same way in which he deals with counsel for private parties. This principle is widely recognized.

There is no question that the use of administrative boards has been accepted and approved in the American system, and it has been said that human beings are the same whether they wear robes or business suits, and common sense and experience is not a judicial monopoly, so that the "tribunal" which adjudicates need not necessarily be composed of judges. See treatise on Administrative Law, Forkosch (1956), pp. 716-721.

With this, the writer has no dispute provided that the people in business suits act as it would be expected, in a fair trial, a judge would act.

Would any court sanction a judge trying a non-jury case leaving the bench for a few hours on the day of hearing, and having his bailiff, law clerk, or secretary "sit in" for him and later fill him in on what the witnesses said?

Justice Cardozo said in the Ohio Bell Telephone Co. case, supra —

> Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the "inexorable safeguard" of a fair and open hearing be maintained in its integrity. The right to such a hearing is one of "the rudiments of fair play" assured to every litigant by the Fourteenth Amendment as a minimal requirement. There can be no compromise on the footing of convenience or expediency, or because of a natural desire

to be rid of harassing delay, when that minimal requirement has been neglected or ignored.

In Morgan v. United States, 298 U. S. 468, 80 L. Ed. 1288 (1936), Chief Justice Hughes laid down the standard of the type of hearing that would comply with the essential requirements of the law and the crux of his statement was — *"The one who decides must hear."*

The statement in full was as follows —

A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a quasi-judicial character. The requirement of a "full hearing" has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The "hearing" is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The "hearing" is hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given.

There is thus no basis for the contention that the authority conferred by §310 of the Packers and Stockyards Act is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order. In such a view, it would be possible, for example, for one official to hear the evidence and argument and arrive at certain conclusions of fact, and another official who had not heard or considered either evidence or argument to overrule those conclusions and for reasons of policy to announce entirely different ones. It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings — their conclusiveness when made within the sphere of the authority conferred — rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. *The one who decides must hear.* (Italics added.)

In view of the foregoing certiorari is granted, and the order of the pollution control board is hereby quashed.

The prevailing party will prepare a judgment in accordance with this opinion and submit it to the opposing side five days

before submitting the same to the court. If the adversary takes exception to the form of the judgment as submitted it shall submit its judgment to the court and the court will sign such judgment as complies with this opinion or prepare its own if neither is in accordance with it.