## MORGAN ET AL. *v.* UNITED STATES ET AL.

No. 686.   Argued April 29, 30, 1936.—Decided May 25, 1936.

*Messrs. Frederick H. Wood* and *John B. Gage* for appellants.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed* and *Messrs. Wendell Berge, Henry McClernan,* and *G. N. Dagger* were on the brief, for the United States et al., appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These are fifty suits, consolidated for the purpose of trial, to restrain the enforcement of an order of the Secretary of Agriculture, fixing the maximum rates to be charged by market agencies for buying and selling livestock at the Kansas City Stock Yards. Packers and Stockyards Act, 1921, 42 Stat. 159, 7 U. S. C. 181–229.

The proceeding was instituted by an order of the Secretary of Agriculture in April, 1930, directing an inquiry into the reasonableness of existing rates. Testimony was taken and an order prescribing rates followed in May, 1932. An application for rehearing, in view of changed economic conditions, was granted in July, 1932. After the taking of voluminous testimony, which was concluded in November, 1932, the order in question was made on June 14, 1933. Rehearing was refused on July 6, 1933.

Plaintiffs then brought these suits attacking the order, so far as it prescribed maximum charges for selling livestock, as illegal and arbitrary and as depriving plaintiffs of their property without due process of law in violation of the Fifth Amendment of the Constitution. The District Court of three judges entered decrees sustaining the order and dismissing the bills of complaint. 8 F. Supp. 766. Motions for rehearing were denied and, by stipulation, the separate decrees were set aside and a joint and final decree was entered to the same effect. Plaintiffs bring this direct appeal. 7 U. S. C. 217; 28 U. S. C. 47.

On the merits, plaintiffs assert that the ultimate basis for the reduction in commission rates is the Secretary's opinion that there are too many market agencies, too many salesmen, and too much competition in the business; that the Secretary has departed entirely from the evidence as to the actual cost of employing salesmen in selling cattle at these yards and has made an allowance for salaries which is based on pure speculation and is wholly inadequate to meet the cost of the service; that he has substituted in place of his accountants' figures as to actual expenditures, with respect to the item entitled "Business Getting and Maintaining Expense," a hypothetical allowance greatly less than actual cost; and that the Secretary has thus made findings without evidence and an order, essentially arbitrary, which prescribes

unreasonable rates. The Government answers that, while the Secretary is not authorized expressly to prescribe or limit the number of firms that may engage in the market agency business, he is under a duty to take cognizance of evidence tending to show that, under present competitive conditions, certain costs actually incurred are unreasonable; that in determining what are just and reasonable rates, he must give consideration to evidence of the excessiveness of costs and if such evidence shows that there are many market agencies not receiving a sufficient volume of business to entitle their costs to be regarded as reasonable, the Secretary must take cognizance of that fact; that it was in this view that the Secretary made certain findings as to the inadequacy of the present business at the stockyards to support economically all the firms now striving to make a profit; that his findings, supported by evidence, were directly pertinent to the determination of reasonable costs, and so determining the Secretary was authorized to fix the rates prescribed in his order.

Before reaching these questions we meet at the threshold of the controversy plaintiffs' additional contention that they have not been accorded the hearing which the statute requires. They rightly assert that the granting of that hearing is a prerequisite to the making of a valid order. The statute provides (42 Stat. 159, 166, § 310; 7 U. S. C. 211):

"Sec. 310. Whenever after full hearing upon a complaint made as provided in section 309, or after full hearing under an order for investigation and hearing made by the Secretary on his own initiative, either in extension of any pending complaint or without any complaint whatever, the Secretary is of the opinion that any rate, charge, regulation, or practice of a stockyard owner or market agency, for or in connection with the furnishing of stockyard services, is or will be unjust, unreasonable, or discriminatory, the Secretary—

(a) May determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what regulation or practice is or will be just, reasonable, and non-discriminatory to be thereafter followed; . . ."

The allegations as to the failure to give a proper hearing are set forth in Paragraph IV of the bill of complaint, quoted in full in the margin.[1] The allegations in substance are: That separate hearings were not accorded to the respective respondents (plaintiffs here). That at the

---

[1] Paragraph IV of the bill of complaint is as follows:

"Petitioner states that the Order is null and void in that this petitioner was denied a full hearing before the Secretary upon the matters and things referred to in the Order of Inquiry as provided for in said Packers and Stockyards Act, 1921, and the enforcement of the Order would take Petitioner's property without due process of law, in violation of the Fifth Amendment of the Constitution of the United States, in that:

"(a) The Secretary overruled and denied the request of this petitioner for a separate, individual and independent hearing apart from any other of the respondents named in said Notice of Inquiry to the prejudice of this petitioner.

"(b) This petitioner requested at the conclusion of the hearings held under said Notice of Inquiry before the said John C. Brooke, that said Examiner prepare a tentative report upon the evidence to be presented to the petitioner and the Secretary subject to oral argument as to any exceptions thereto which the petitioner might care to present, so that in this manner a hearing might be had before the Secretary without undue inconvenience to the Secretary, but said request was denied and no tentative report was exhibited to petitioner and no oral argument upon the issues presented by said Order of Inquiry and the evidence taken by said Examiner was at any time had before the Secretary.

"(c) The Secretary, without warrant or authority of law, delegated to the said R. W. Dunlap and Rexford G. Tugwell, purporting to be at the times hereinbefore named Acting Secretaries of Agriculture, authorities and powers vested solely in the Secretary involving the exercise of discretion and the determination of issues in respect to the justice, reasonableness and lawfulness of the rates and charges

conclusion of the taking of the testimony before an examiner, a request was made that the examiner prepare a tentative report, which should be subject to oral argument and exceptions, so that a hearing might be had before the Secretary without undue inconvenience to him, but that the request was denied and no tentative report was exhibited to plaintiffs and no oral argument upon the issues presented by the order of inquiry and the evidence was at any time had before the Secretary. That the Secretary, without warrant of law, delegated to Acting Secretaries the determination of issues

---

of this petitioner. At each and all of the times hereinabove referred to, when the said oral arguments were presented after the original hearing in said proceeding and after the re-hearing thereof, the then Secretary of Agriculture was in Washington, D. C., at his office in the Department of Agriculture, and at said time was neither sick, absent, nor from any other cause disabled in the performance of official duties of said Secretary of Agriculture, and a purported appointment of any other person as Acting Secretary of Agriculture was illegal, null and void under the laws of the United States.

"(d) Petitioner states on information and belief, and, therefore, alleges the fact to be, that the Secretary at the time said Order was signed by him had not personally heard or read any of the evidence presented at any hearing in connection with this proceeding and had not heard or considered oral arguments relating thereto submitted on behalf of this petitioner and had (sic) read or considered any briefs submitted by petitioner in this proceeding, but that the sole information of said Secretary with respect to said proceeding was derived from consultation with employees in the Department of Agriculture, out of the presence of this petitioner or any representative of this petitioner.

"By reason of each and all of the foregoing facts, petitioner avers that said course of action so taken by the Secretary was without warrant and authority of law, and by reason of each and all of the acts and omissions in this paragraph referred to (including the denial of petitioner's request for a separate hearing and the overruling of objections) this petitioner has been denied the 'full hearing' before the Secretary to which the petitioner is entitled under said Packers and Stockyards Act, 1921, and under the Constitution of the United States."

476

with respect to the reasonableness of the rates involved. That when the oral arguments were presented after the original hearing, and after the rehearing, the Secretary was neither sick, absent, nor otherwise disabled, but was at his office in the Department of Agriculture and the appointment of any other person as Acting Secretary was illegal. That the Secretary at the time he signed the order in question had not personally heard or read any of the evidence presented at any hearing in connection with the proceeding and had not heard or considered oral arguments relating thereto or briefs submitted on behalf of the plaintiffs, but that the sole information of the Secretary with respect to the proceeding was derived from consultation with employees in the Department of Agriculture out of the presence of the plaintiffs or any of their representatives.

On motion of the Government, the District Court struck out all the allegations in Paragraph IV of the bill of complaint and the plaintiffs were thus denied opportunity to require an answer to these allegations or to prove the facts alleged.

Certain facts appear of record. The testimony was taken before an examiner. At its conclusion, counsel for respondents stated "that he would continue to demand that the Secretary hear personally the argument of the evidence in behalf of the individual respondents, or at least have some definite course of procedure adopted whereby the examiner, or some one else, should formulate a report on the evidence so that the respondents could have the character of hearing and right to present their side of the issues in this case, which they believe the law entitles them to." The Government does not suggest that this request was granted and plaintiffs say that it was denied. Oral argument upon the evidence was had before the Acting Secretary of Agriculture. Subsequently, brief was filed on plaintiffs' be-

half. Thereafter, reciting "careful consideration of the entire record in this proceeding," findings of fact and conclusions, and an order prescribing rates, were signed by the Secretary of Agriculture.

*First.*—The Packers and Stockyards Act makes the provisions of all laws relating to the "suspending or restraining the enforcement". or the "setting aside" of the orders of the Interstate Commerce Commission applicable to the "jurisdiction, powers and duties of the Secretary" in enforcing the provisions of the Act. § 316; 7 U. S. C. 217. These suits for the review of the administrative action were thus directly authorized and appeal lies under the Urgent Deficiencies Act of October 22, 1913. 38 Stat. 219, 220; 28 U. S. C. 47. *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443; *Acker* v. *United States, ante,* p. 426. All questions touching the regularity and validity of the proceeding before the Secretary are open to review. *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 286–290; *Florida* v. *United States,* 282 U. S. 194, 212–215. When the Secretary acts within the authority conferred by the statute, his findings of fact are conclusive. *Tagg Bros. & Moorhead* v. *United States, supra; St. Joseph Stock Yards Co.* v. *United States, ante,* p. 38; *Acker* v. *United States, supra.* But, in determining whether in conducting an administrative proceeding of this sort the Secretary has complied with the statutory prerequisites, the recitals of his procedure cannot be regarded as conclusive. Otherwise the statutory conditions could be set at naught by mere assertion. If upon the facts alleged, the "full hearing" required by the statute was not given, plaintiffs were entitled to prove the facts and have the Secretary's order set aside. Nor is it necessary to go beyond the terms of the statute in order to consider the constitutional requirement of due process as to notice and hearing. For the statute itself demands a full hearing and the order is void if such a hearing was

denied. *Interstate Commerce Comm'n* v. *Louisville &
Nashville R. Co.*, 227 U. S. 88, 91; *United States* v. *Abi-
lene & Southern Ry. Co.*, *supra; Florida* v. *United States,*
*supra; United States* v. *B. & O. R. Co.*, 293 U. S. 454, 464.

*Second.*—The outstanding allegation, which the Dis-
trict Court struck out, is that the Secretary made the rate
order without having heard or read any of the evidence,
and without having heard the oral arguments or having
read or considered the briefs which the plaintiffs sub-
mitted. That the only information which the Secretary
had as to the proceeding was what he derived from con-
sultation with employees of the Department.

The other allegations of the stricken paragraph do not
go to the root of the matter. Thus, it cannot be said
that the failure to hear the respondents separately was
an abuse of discretion. Again, while it would have been
good practice to have the examiner prepare a report and
submit it to the Secretary and the parties, and to permit
exceptions and arguments addressed to the points thus
presented,—a practice found to be of great value in pro-
ceedings before the Interstate Commerce Commission—
we cannot say that that particular type of procedure was
essential to the validity of the hearing. The statute does
not require it and what the statute does require relates to
substance and not form.

Nor should the fundamental question be confused with
one of mere delegation of authority. The Government
urges that the Acting Secretary who heard the oral argu-
ment was in fact the Assistant Secretary of Agriculture
whose duties are prescribed by the Act of February 9,
1889 (5 U. S. C. 517), providing for his appointment and
authorizing him to perform such duties in the conduct
of the business of the Department of Agriculture as may
be assigned to him by the Secretary. If the Secretary
had assigned to the Assistant Secretary the duty of hold-
ing the hearing, and the Assistant Secretary accordingly

had received the evidence taken by the examiner, had heard argument thereon and had then found the essential facts and made the order upon his findings, we should have had simply the question of delegation. But while the Assistant Secretary heard argument he did not make the decision. The Secretary who, according to the allegation, had neither heard nor read evidence or argument, undertook to make the findings and fix the rates. The Assistant Secretary, who had heard, assumed no responsibility for the findings or order, and the Secretary, who had not heard, did assume that responsibility.

We may likewise put aside the contention as to the circumstances in which an Acting Secretary may take the place of his chief. In the course of administrative routine, the disposition of official matters by an Acting Secretary is frequently necessary and the integrity of administration demands that credit be given to his action in that capacity. We have no such question here. The Acting Secretary did not assume to make the order.

*Third.*—What is the essential quality of the proceeding under review, and what is the nature of the hearing which the statute prescribes?

The proceeding is not one of ordinary administration, conformable to the standards governing duties of a purely executive character. It is a proceeding looking to legislative action in the fixing of rates of market agencies. And, while the order is legislative and gives to the proceeding its distinctive character (*Louisville & Nashville R. Co.* v. *Garrett,* 231 U. S. 298, 307), it is a proceeding which by virtue of the authority conferred has special attributes. The Secretary, as the agent of Congress in making the rates, must make them in accordance with the standards and under the limitations which Congress has prescribed. Congress has required the Secretary to determine, as a condition of his action, that the existing rates are or will be "unjust, unreasonable, or discrimina-

tory." If and when he so finds, he may "determine and prescribe" what shall be the just and reasonable rate, or the maximum or minimum rate, thereafter to be charged. That duty is widely different from ordinary executive action. It is a duty which carries with it fundamental procedural requirements. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. Nothing can be treated as evidence which is not introduced as such. *United States* v. *Abilene & Southern Ry. Co., supra*. Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances must not be considered which should not legally influence the conclusion. Findings based on the evidence must embrace the basic facts which are needed to sustain the order. *Interstate Commerce Comm'n* v. *Louisville & Nashville R. Co., supra; Chicago Junction Case*, 264 U. S. 258, 263; *United States* v. *Abilene & Southern Ry. Co., supra; Florida* v. *United States, supra; United States* v. *B. & O. R. Co., supra.*

A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a *quasi-judicial* character. The requirement of a "full hearing" has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The "hearing" is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The "hearing" is the hearing of evidence and argument. If the one who de-

termines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given.

There is thus no basis for the contention that the authority conferred by § 310 of the Packers and Stockyards Act is given to the Department of Agriculture, as a department in the administrative sense, so that one official may examine evidence, and another official who has not considered the evidence may make the findings and order. In such a view, it would be possible, for example, for one official to hear the evidence and argument and arrive at certain conclusions of fact, and another official who had not heard or considered either evidence or argument to overrule those conclusions and for reasons of policy to announce entirely different ones. It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge. The one who decides must hear.

This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making deter-

minations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred.

The Government presses upon our attention the case of *Local Government Board* v. *Arlidge* [1915] A. C. 120, reversing *King* v. *Local Government Board* [1914] 1 K. B. 160. That case has provoked much discussion, but we do not think it necessary to review it, as it relates to a different sort of administrative action and is not deemed to be pertinent to a proceeding under the statute before us and to the hearing which is required by the principles established by our decisions.

Our conclusion is that the District Court erred in striking out the allegations of Paragraph IV of the bill of complaint with respect to the Secretary's action. The defendants should be required to answer these allegations and the question whether plaintiffs had a proper hearing should be determined.

The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*