### SAGER v. PARKER.
### No. 547.

Municipal Court of Appeals for the District of Columbia.

Oct. 20, 1947.

Frederick H. Livingstone and Robert E. Lynch, both of Washington, D. C., for appellant.

Herman Miller, of Washington, D. C. (Dorsey K. Offutt, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This is an appeal from a judgment in favor of a tenant against his landlord for damages on account of the landlord's fail-

---

ure and refusal to provide the minimum service standard to which the tenant claimed to be entitled under the District of Columbia Emergency Rent Act.[1]

The vital question on this appeal relates to the existence of an order of the Rent Administrator establishing a minimum service standard for the premises occupied by the tenant. The premises consist of an apartment in one of a group of four buildings completed for occupancy in October 1941. In August 1942 a proceeding was instituted before the Rent Administrator with respect to the rent and service for the various units of the four buildings. This proceeding resulted in certain findings and recommended orders of an examiner under date of March 10, 1943. Thereafter an appeal was taken by the landlord to a three-judge court of the Municipal Court.[2] The appeal was dismissed and we affirmed the dismissal on the ground that the proceedings before the administrator were under section 2(1) (c) of the Act,[3] from which the Act provides no appeal to the courts. Sager v. Stamps, D.C.Mun.App., 38 A.2d 113.

The present action is based upon one of the findings and recommended orders of the examiner of March 10, 1943. This instrument is entitled "Examiner's Findings, Recommended Order and Notice." At the conclusion of the findings, it is stated: "the following is recommended:

"Order

"That the landlord herein within 10 days after the effective date hereof shall restore the janitor service which shall include maintenance of lawns, public halls and lighting, and supervision of removal facilities for trash and garbage disposal; that he shall provide suitable removable drainboards for all kitchen sinks; that he shall make or cause to be made the repairs and replacements indicated or reasonably implied by the items set forth in the Respondent's written answers referred to above in Findings Number 5 and 6 and that the Maximum Rent Ceiling for premises 1901 Rosedale Street, N. E., Apartment 4 is determined to be $38.50 per month, unfurnished, effective Mar 21 1943.

J. Warren Wilson,
Examiner.

"Notice

"The above findings and order will be deemed to be the findings and order of the Administrator on the effective date set forth therein unless written request for review is filed prior thereto or unless a rehearing or extension of time is granted within the discretion of the Examiner or the Administrator."

The theory of the present action is that the above recommended order established the maximum rent ceiling and minimum service standard; and evidence was offered tending to establish that the landlord had failed and refused to render the service required by that order.

Section 2(1) of the Rent Act[4] provides that the maximum rent ceilings and minimum service standards for housing accommodations shall be the following:

"(a) For housing accommodations rented on January 1, 1941, the rent and service to which the landlord and tenant were entitled on that date.

"(b) For housing accommodations not rented on January 1, 1941, but which had been rented within the year ending on that date, the rent and service to which the landlord and tenant were last entitled within such year.

"(c) For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent and service generally prevailing for comparable housing accommodations as determined by the Administrator."

Since, as expressly found by the examiner, the premises in question were first rented in October 1941, the minimum service standard applicable is the "service generally prevailing for comparable housing accommodations as determined by the Administrator." The question, therefore, is

[1] Code 1940, Supp. V, § 45—1610(a).
[2] Code 1940, Supp. V, § 45—1609(c).
[3] Code 1940, Supp. V, § 45—1602(1) (c).
[4] Code 1940, Supp. V, 45—1602(1).

whether there has been such a determination by the Administrator.

It will be observed that while the recommended order purports in express words to determine the maximum rent ceiling, it makes no direct reference to a minimum service standard or any determination thereof. The order, however, does require of the landlord certain services, improvements and repairs and it is the tenant's contention that such requirements constitute the service standard. Assuming that the order does determine the service standard, the question remains whether such determination became, by lapse of time or otherwise, the determination of the Administrator.

The order does not purport to have been signed, approved or adopted by the Administrator. It purports to be only the recommended order of the examiner. True, the notice states that the findings and order "will be deemed to be the findings and order of the Administrator" on a certain date in the absence of specified events, which events did not occur; but the implication of the notice is that the order would not be submitted to the Administrator but would take effect merely by passage of time, and, as said before, the record shows no affirmative act by the Administrator in the way of consideration or approval of the order. Appellee urges that the act of the Administrator in appearing by his general counsel in the Municipal Court and this court in the case of Sager v. Stamps, supra, to defend the order of the examiner constituted approval of the order. It seems obvious that such defense of the examiner's order did not make it the order of the Administrator.

■ Can there be a valid determination by the Administrator without any positive act on his part? Section 2(1) (c) of the Act, above quoted, states that the minimum service standard shall be the "service generally prevailing for comparable housing accommodations as determined by the Administrator." Such service is a fact to be determined by the Administrator. Delsnider v. Gould, App.D.C., 154 F.2d 844. And his determination "is not an exact computation but is his judgment based on his view of evidence before him." Moore v. Coates, D.C.Mun.App., 40 A.2d 68, 71.

■ Here the record discloses that the determination was that of the examiner. Can that determination be accepted and adopted by the Administrator without personal consideration of the evidence on which the examiner arrived at his conclusion? There is no provision in the Act for delegation of authority by the Administrator. The authority of determination is given by the Act specifically to the Administrator and to no one else. The determination must be that of the Administrator and such determination requires a consideration and weighing of the evidence. "The one who decides must hear." Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288. This does not mean that the Administrator may not avail himself of the assistance of examiners to hear, analyze and sift evidence and make recommendations, but it does mean that the one on whom final responsibility for the determination is imposed must consider and appraise the evidence which justifies the determination. Morgan v. United States, supra. In other words, before acting, the Administrator must do that which is necessary "to insure an informed judgment." Southern Garment Mfrs. Ass'n, Inc., v. Fleming, 74 App.D.C. 228, 122 F. 2d 622, 626. The record shows no act by the Administrator indicating any consideration of the recommended order or the evidence on which it is based. It shows no determination by the Administrator, either with or without an appraisal of the evidence. It shows only a procedure by which the recommended order would by passage of time "be deemed" the order of the Administrator. Had the order purported to have been considered and approved by the Administrator, we would have an entirely different situation.

On the record presented we are compelled to conclude that there was no determination by the Administrator of a minimum service standard for the premises in question and that until such determination the tenant is entitled only to the service provided for in his lease. Delsnider v. Gould, supra.

It is suggested that because section 8[5] provides for a procedure on petition under section 4,[6] relating to adjustments of rent ceilings and service standards, substantially the same as that followed in this proceeding, and expressly provides that under stated circumstances, without action on the part of the Administrator, "the findings and recommended order of the examiner shall thereupon be deemed the findings and order of the Administrator," that such procedure is permissible in proceedings under section 2(1) (c). The answer is that Congress having specifically authorized a course of procedure in proceedings under section 4 and having omitted such authorization for proceedings under section 2(1) (c), the assumption is that the omission was deliberate. We are not required to find the reasons why Congress saw fit to make this distinction, but several reasons are readily suggested. The two proceedings are utterly different in character and purpose. A proceeding under section 4 relates to adjustment of an already established ceiling or standard, while one under 2(1) (c) is for the purpose of establishing the original or basic ceiling and standard for property in cases where the law has not automatically fixed them. Proceedings under section 4 are initiated by the tenant or landlord, and while they may be so initiated under section 2(1) (c), they also may and should be initiated by the Administrator whenever he is aware of a situation requiring his determination. By section 9[7] Congress allowed an appeal to the courts to review an order under section 4 but gave no such right of review of a determination under section 2(1) (c). There is no more ground for holding that the provisions of section 8, relating to proceedings under section 4, set a standard for proceedings under section 2(1) (c), than there would be for holding that because section 9 authorizes a court review of orders under section 4, it by implication authorizes a court review of determinations under section 2(1) (c). It is evident that Congress considered the two types of proceedings as quite different and was careful to distinguish between them.

Since, as we hold, there was no determination by the Administrator establishing a service standard, the judgment based on a violation of such standard cannot stand.

Reversed.

---

[5] Code 1940, Supp. V, § 45—1608.
[6] Code 1940, Supp. V, § 45—1604.

[7] Code 1940, Supp. V, § 45—1609.