## PARKER v. SAGER.
### No. 9686.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 17, 1948.
Decided April 25, 1949.

Mr. Herman Miller, with whom Mr. Dorsey K. Offutt, who entered an appearance, was on the brief, for appellant.

Messrs. Frederick H. Livingstone and Robert E. Lynch for appellee.

Messrs. Nathan H. David and James H. Biscoe, who entered appearances, were on the brief for *amici curiae*.

Before STEPHENS, Chief Judge, and PRETTYMAN and PROCTOR, Circuit Judges.

STEPHENS, Chief Judge.

A résumé of the pertinent provisions of the District of Columbia Emergency Rent Act, Act of December 2, 1941, 55 Stat. 788, §§ 1, et seq., D.C.Code (Supp. VI 1948) §§ 45—1601, et seq., hereafter referred to as the Act, and a statement of the ruling of the Municipal Court of Appeals for the District of Columbia in a related case, Sager v. Stamps, 1944, D.C.Mun.App., 38 A.2d 113, are necessary to an understanding of the question presented in the instant appeal: Section 2(1) (c) of the Act provides that maximum-rent ceilings and minimum-service standards for housing accommodations, excluding hotels, in the District of Columbia shall be, for

housing accommodations not rented on January 1, 1941, nor within the year ending on that date, "the rent and service generally prevailing for comparable housing accommodations as determined by the Administrator"—whose office was created by the Act. Section 4 of the Act authorizes any landlord or tenant to petition the Administrator to adjust the maximum-rent ceiling upon the ground that it is, due to peculiar circumstances affecting housing accommodations in question, substantially higher or lower than the rent generally prevailing for comparable accommodations; authorizes a landlord to petition the Administrator to adjust the maximum-rent ceiling or minimum-service standard or both to compensate for a substantial rise in taxes or other maintenance or operating costs or expenses or a substantial capital improvement or alteration since January 1, 1941; authorizes a tenant to petition the Administrator upon the ground that the service supplied to him is less than the service established by the minimum-service standard for his housing accommodations; and authorizes the Administrator to make appropriate adjustment orders under such petitions. Section 4 also makes petitions filed thereunder subject to the provisions of Sections 8 and 9 of the Act. Section 8 requires that a petition filed under Section 4 be referred to an examiner and that notice of such action shall be given in a manner to be prescribed by regulation; that the landlord or tenant shall be given an opportunity to be heard or to file written statements; that the examiner shall make findings of fact and recommend an appropriate order, that copies of such findings and order shall be served upon the parties to the proceeding in such manner as the Administrator may prescribe by regulation, that within five days after such service any such party may request that the recommended order be reviewed by the Administrator, and that, if there be no such request within such time, the findings and recommended order of the examiner shall thereupon be deemed to be the findings and

order of the Administrator. Section 9 provides that within ten days after issuance of an order of the Administrator under Section 4 any party may file a petition to review the Administrator's action in the Municipal Court of the District of Columbia. Section 10 provides for the recovery of damages by a tenant if a landlord receives rent or refuses to render services in violation of any provision of the Act or of any regulation or order thereunder prescribing a rent ceiling or service standard.

In Sager v. Stamps, cited above, the following was made to appear: Sager was the owner of a group of four family apartment buildings completed for occupancy in October 1941 and therefore not rented on January 1, 1941, nor within the year ending on that date, and hence subject to the provisions of Section 2(1) (c) of the Act above summarized. These buildings were rented upon completion; one of the tenants was Stamps. On August 27, 1942, purporting to act under Section 4 of the Act, Sager, as landlord, filed with the Administrator a petition requesting an adjustment in the maximum-rent ceiling upon the ground that it was substantially lower than the rent generally prevailing for comparable housing accommodations. The petition was heard by an examiner and testimony given by Sager and also by several tenants. On March 10, 1943, the examiner's findings and a form of order were filed. The examiner found that the existing rental was that generally prevailing for comparable housing accommodations. His recommended order was that certain items of service be furnished, restored or maintained and that the maximum-rent ceiling be the rent then being paid. The form of the examiner's order is printed in the margin.[1] Appended to the order was an unsigned notice that the findings and order "will be deemed to be the findings and order of the Administrator on the effective date set forth therein unless written request for review is filed prior thereto or unless a rehearing or extension of time is granted within the discretion of the Examiner or the Administra-

1 ORDER

That the landlord herein within 10 days after the effective date hereof shall restore the janitor service which shall include maintenance of lawns, public halls and lighting, and supervision of re-

moval facilities for trash and garbage disposal; that he shall provide suitable removable drainboards for all kitchen sinks; that he shall make or cause to be made the repairs and replacements indicated or reasonably implied by the

tor." Copies of the examiner's findings and of the recommended order were served upon the parties by mail. The effect of the findings and order, if they had validity in the absence of action by the Administrator himself as distinguished from the examiner, was to deny Sager's petition as landlord for an adjustment in the maximum-rent ceiling, but to establish a minimum-service standard. Dissatisfied with the findings and order, Sager, after denial of a motion for rehearing and to set the findings and order aside, petitioned for review in the Municipal Court.[2] Motions to dismiss the petition for review were filed by the tenants, including Stamps, and by the Administrator. Grounds assigned were the failure to petition for court review within ten days after the issuance of the Administrator's order, and, by the Administrator, that the proceeding before him was in reality under Section 2 of the Act, not under Section 4, and that no court review of action taken under Section 2 is provided for in the Act. The motions to dismiss were granted by the Municipal Court. From the dismissal an appeal was taken to the Municipal Court of Appeals. That court, upon the ground urged by the Administrator, affirmed the dismissal. In its opinion the court took the view that the purpose of Section 2 of the Act is the establishment of maximum-rent ceilings and minimum-service standards, whereas that of Section 4 is to afford an opportunity for the adjustment of such ceilings or standards after establishment if either landlord or tenant regard them as inadequate or unfair. The court held that the proceeding initiated by Sager's petition could not be treated as one for an adjustment of a maximum-rent ceiling or minimum-service standard under Section 4 because no such ceiling or standard as defined in the Act was in existence;

that in consequence the procedure and review provisions of Sections 8 and 9 were inapplicable and the proceeding must be treated as one under Section 2 in respect of which no provision for review is made by the Act. Although the court referred to it, it expressly declined to rule upon the question whether, in view of the requirement of Section 2 for a determination by the Administrator, the examiner's findings and recommended order became automatically the determination of the Administrator without showing of consideration and affirmative action by him.

The instant appeal arises from a suit instituted in the Municipal Court under Section 10 of the Act by Parker as tenant against Sager as landlord of the same housing accommodations as were the subject of the proceedings in Sager v. Stamps, above reviewed. The suit was for damages on account of Sager's failure and refusal, as alleged, to provide the minimum-service standard to which Parker claimed to be entitled under the Act and the recommended order and notice of the examiner involved in Sager v. Stamps. The theory of the suit was that the recommended order and notice established a maximum-rent ceiling and minimum-service standard, and Parker offered evidence tending to establish that Sager had failed and refused to render the service alleged thus to have been required. The Municipal Court gave judgment for Parker. Sager appealed to the Municipal Court of Appeals. That court reversed the judgment of the Municipal Court. Sager v. Parker, 1947, 55 A.2d 349. Parker then petitioned this court for the allowance of an appeal. On account of the importance of the question involved we allowed the appeal.

The Municipal Court of Appeals ruled that since, as expressly found by the exam-

---

items set forth in the Respondent's written answers referred to above in Findings Number 5 and 6 and that the MAXIMUM RENT CEILING for premises 1901 Rosedale Street, N. E., Apartment 4 is determined to be $38.50 per month, unfurnished, effective Mar. 21, 1943.

J. Warren Wilson
Examiner

2 It does not appear in the opinion in Sager v. Stamps who acted upon the motion for rehearing and to set the findings and order aside, and the record in that

case is not before this court, and was apparently not before the Municipal Court of Appeals, in the instant case. In the trial of the instant case in the Municipal Court the record in the administrative proceeding which underlies both the instant case and Sager v. Stamps was offered and received in evidence. But the record in this court does not contain the motion for rehearing and to set the findings and order of the examiner aside and does not show who acted upon that motion.

iner, the housing accommodations in question were first rented in October 1941, the provisions of Section 2(1) (c) of the Act were pertinent and that accordingly "the minimum service standard applicable is the 'service generally prevailing for comparable housing accommodations as determined by the Administrator.' The question, therefore, is whether there has been such a determination by the Administrator." (55 A.2d at 350-1) The court said that the implication of the examiner's notice is that the order would not be submitted to the Administrator but would take effect merely by passage of time, and that the order does not purport to have been signed, approved, or adopted by the Administrator; that the record shows no affirmative act by the Administrator in the way of consideration or approval of the order. The court continued:

. . . Can that determination be accepted and adopted by the Administrator without personal consideration of the evidence on which the examiner arrived at his conclusion? There is no provision in the Act for delegation of authority by the Administrator. The authority of determination is given by the Act specifically to the Administrator and to no one else. The determination must be that of the Administrator and such determination requires a consideration and weighing of the evidence. "The one who decides must hear." Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288. This does not mean that the Administrator may not avail himself of the assistance of examiners to hear, analyze and sift evidence and make recommendations, but it does mean that the one on whom final responsibility for the determination is imposed must consider and appraise the evidence which justifies the determination. Morgan v. United States, supra. In other words, before acting, the Administrator must do that which is necessary "to insure an informed judgment." Southern Garment Mfrs. Ass'n, Inc., v. Fleming, 74 App.D.C. 228, 122 F.2d 622, 626. The record shows no act by the Administrator indicating any consideration of the recommended order or the evidence on which it is based. It shows no determination by the Administrator, either with or without an appraisal of the evidence. It shows only a procedure by which the recommended order would by passage of time "be deemed" the order of the Administrator. Had the order purported to have been considered and approved by the Administrator, we would have an entirely different situation.

On the record presented we are compelled to conclude that there was no determination by the Administrator of a minimum service standard for the premises in question and that

until such determination the tenant is entitled only to the service provided for in his lease. Delsnider v. Gould, supra [1946, 81 U.S.App. D.C. 54, 154 F.2d 844]. [55 A.2d at 351]

It was urged upon the Municipal Court of Appeals by Parker that because Section 8 of the Act provides for a procedure on petition under Section 4, relating to adjustments of rent ceilings and service standards, substantially the same as the procedure followed by the examiner and which eventuated in his recommended order and notice (as described in Sager v. Stamps), and that because Section 8 also provides that under stated circumstances without action on the part of the Administrator "the findings and recommended order of the examiner shall thereupon be deemed to be the findings and order of the Administrator" (55 A.2d at 352), such procedure was permissible in a proceeding under Section 2(1) (c). But the Municipal Court of Appeals ruled:

. . . The answer is that Congress having specifically authorized a course of procedure in proceedings under section 4 and having omitted such authorization for proceedings under section 2 (1) (c), the assumption is that the omission was deliberate. We are not required to find the reasons why Congress saw fit to make this distinction, but several reasons are readily suggested. The two proceedings are utterly different in character and purpose. A proceeding under section 4 relates to adjustment of an already established ceiling or standard, while one under 2(1) (c) is for the purpose of establishing the original or basic ceiling and standard for property in cases where the law has not automatically fixed them. Proceedings under section 4 are initiated by the tenant or landlord, and while they may be so initiated under section 2 (1) (c), they also may and should be initiated by the Administrator whenever he is aware of a situation requiring his determination. By section 9 Congress allowed an appeal to the courts to review an order under section 4 but gave no such right of review of a determination under section 2 (1) (c). There is no more ground for holding that the provisions of section 8, relating to proceedings under section 4, set a standard for proceedings under section 2 (1) (c), than there would be for holding that because section 9 authorizes a court review of orders under section 4, it by implication authorizes a court review of determinations under section 2 (1) (c). It is evident that Congress considered the two types of proceedings as quite different and was careful to distinguish between them. [55 A.2d at 352]

The Municipal Court of Appeals finally concluded that since, as it held, there was

no determination by the Administrator establishing a service standard, the judgment of the Municipal Court entered upon the theory that there was such a standard and a violation thereof could not stand.

■ On this appeal a brief of *amici curiae* was, with leave of this court, filed. Therein it is urged that when (as described in the review of Sager v. Stamps above) Sager as landlord petitioned, purportedly under Section 4 of the Act, for an adjustment of an allegedly existing maximum-rent ceiling for the housing accommodations in question he, in effect, represented that the procedure provided for in Section 8, and which was followed by the examiner, was appropriate and would result in an authoritative determination of both a rent and service standard and that he (Sager) was therefore under the principles of equitable estoppel forbidden to contend, as he did in the proceedings below and does here, that the examiner's recommended order was not a sufficient basis for Parker's suit for damages. We think this contention is not supportable. "The essential elements of equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." 19 Am.Jur., Estoppel, § 42. The propositions stated are so elementary that no further authority need be cited. It is obvious that under them there is no basis for equitable estoppel as against Sager since the representation which he is asserted to have made is, as the above statement shows, not one of fact but of law, i. e., of the legal appropriateness of the procedure followed by the examiner to result in an authoritative rent and service standard.

■ The brief of *amici curiae* asserts further that Sager is as a matter of law forbidden to take the inconsistent legal positions assertedly taken by him as above set forth. But the rule that a party is not permitted to maintain inconsistent legal positions in judicial proceedings is, according to the better view, subject to the limitation, among others, that the legal position first asserted must have been successfully maintained. Sinclair Refining Co. v. Jenkins Petroleum Process Co., 1 Cir., 1938, 99 F.2d 9, certiorari denied, 1939, 305 U.S. 659, 59 S.Ct. 362, 83 L.Ed. 427, rehearing denied, 1939, 306 U.S. 667, 59 S.Ct. 484, 83 L. Ed. 1062, 1939, 307 U.S. 651, 59 S.Ct. 1035, 83 L.Ed. 1530; Gordon v. Hutchins, 1919, 118 Me. 6, 105 A. 356. Cf. Galt v. Phoenix Indemnity Co., 1941, 74 App.D.C. 156, 159, 120 F.2d 723, 726. But in Sager v. Stamps, Sager did not successfully maintain the legal position in question. On the contrary, the Municipal Court of Appeals in that case, as is pointed out in the review of Sager v. Stamps above, declined to rule whether the examiner's findings and recommended order become automatically the determination of the Administrator without consideration and affirmative action by him. The cases cited by *amici curiae* involve situations in which a party successfully establishing a legal position in one judicial proceeding was held forbidden to contest it or to take a different position in another. For example, in Assets Realization v. Roth, 1919, 226 N.Y. 370, 123 N.E. 743, wherein a party was held estopped from contending that an agreement sued upon was one of guaranty by reason of his successful contention in another action that the agreement was one of indemnity, not guaranty, Mr. Justice Cardozo said: "The defendant helped to induce that ruling when the result was to his advantage. We will not change it at his instance now when the result is to his detriment. . . ." (226 N.Y. at 374, 123 N. E. at 744)

We think the decision of the Municipal Court of Appeals on the record before it and before this court is correct and should be affirmed.

Affirmed.