Genava M. SPONAUGLE, Appellant,

v.

UNIVERSAL ACCEPTANCE CORPORA-
TION, Appellee.

No. 4021.

District of Columbia Court of Appeals.

Submitted March 13, 1967.

Decided April 19, 1967.

Ralph R. Curry, Washington, D. C., for appellant.

Bernard T. Levin, Washington, D. C., for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN, Associate Judge (Retired).

QUINN, Judge:

On March 30, 1960, appellant's husband signed a conditional sales contract for the purchase of an automobile. At the same time both he and appellant signed a promissory note, payable to Bill Hall Motors, Inc., which was subsequently negotiated to appellee. The transaction occurred in Virginia.

Following a default in payments on the note, suit was filed in the District of Columbia on November 27, 1961, against appellant and her husband. The couple had been separated for about a year and only Mr. Sponaugle was served at this time. In December he confessed judgment and in June 1962 the note in question was surrendered and marked "cancelled and merged in judgment in the Municipal Court for the District of Columbia."[1] On August 28 and again on September 4, 1962, Mr. Sponaugle wrote to appellee that he had lost his job

1. Now the District of Columbia Court of General Sessions.

and it should repossess and sell the car. The second letter was written on appellee's stationery. On February 15, 1963, he was discharged in bankruptcy.[2]

Appellant was then served and judgment was entered against her following a non-jury trial before Judge Harry L. Walker, who wrote a memorandum opinion. On appeal we remanded for a new trial because Judge Walker had resigned before deciding the case. At the second trial all facts as found by Judge Walker were stipulated. In addition, the conditional sales contract was viewed for the first time, and it was stipulated that appellant had not signed it. No further testimony was taken, and the court, after argument, agreed with the logic and reasoning of Judge Walker's opinion, adopted it, corrected what it called a clerical error to reflect that the note in question was cancelled only against Mr. Sponaugle, and entered judgment for appellee. This appeal followed.

The trial court found that if Mr. Sponaugle alone had signed the contract and appellant had signed only the note as an accommodation maker, then Mr. Sponaugle's two letters would constitute either a new contract as provided for in Virginia Code § 55–93 (1950)[3] or a waiver of the protections afforded by that section. The Code provides, in effect, that if the vendor of any personal property sold under a conditional sales contract, or the assignee of any such contract, without legal process repossesses and sells such property, other than by public sale after ten days' notice to the vendee, such repossession and sale shall operate to fully discharge the amount of money secured by such contract. The statute does not, however, affect the validity of any new contract in writing, made after default on the part of the vendee, between the vendor or his assignee and the vendee providing for the resale of such personal property and the vendee's liability for any deficiency.

■ The statute speaks in terms of a *contract in writing*. It is therefore unlike a statute of frauds which provides for a written agreement or memorandum. See, e. g., D.C.Code § 28–3502 (Supp. V, 1966). The letters written by Mr. Sponaugle were in the form of requests, which are nothing more than offers. To ripen into a contract, an acceptance is necessary; and in order for that contract to be in writing, the acceptance must be in writing. Clearly, then, there was no written contract.

If the letters are deemed a waiver of the protections of Section 55–93, it becomes necessary to determine what effect, if any, such a waiver had upon the rights of appellant.

■ There is no dispute that Mr. Sponaugle alone signed the conditional sales contract and that after the couple separated, he retained physical possession of the car and treated it in all respects as if it were his own. Appellant did not receive notice that the car was repossessed or sold until she told her husband that her wages were being attached. The letters to appellee were written in the first person singular, and appellant knew nothing about them. In spite of this the trial court found that by permitting her husband to keep the car, appellant was estopped from complaining under Section 55–93. We fail to see the logic of this conclusion. The car belonged to Mr. Sponaugle. When the couple separated, he naturally kept it; when he could not meet his payments, he wrote to appellee requesting the repossession and sale of his vehicle. From the start, appellant was merely an accommodation maker—one who puts his

---

2. Although the record does not show when the car was repossessed and sold, nor how much was received from the sale, both parties and the trial court refer to the fact of repossession and sale. It appears that this occurred after judgment had been confessed by Mr. Sponaugle and prior to his discharge in bankruptcy.

3. This statute was subsequently repealed and replaced by the Uniform Commercial Code which went into effect in Virginia on January 1, 1966.

name to a note without receiving any consideration and with the intention of lending his credit to the accommodated party. Va.Code § 6–381 (1950); Black, Law Dictionary (4th ed. 1957). If appellant had any rights under Section 55–93, she was not estopped from asserting them.[4]

■ Section 55–93, although construed as protecting the rights of a purchaser of personal property,[5] specifically states that unless its terms are complied with, the amount of money secured by the conditional sales contract shall be cancelled and fully discharged. The record is clear that its terms were not met. We are aware of no reason why this policy of protecting the vendee from a private and therefore ostensibly unbeneficial sale of the repossessed property should not also be applied to those other parties who are primarily liable on the debt.[6] It would be patently unfair to permit one maker to be discharged from his obligation because of conduct on the part of the holder of the instrument, which conduct the legislature has attempted to discourage, while at the same time requiring another maker, who is jointly liable on the same instrument, to pay the obligation in full. We hold, therefore, that appellant was protected by Section 55–93, and since she was not estopped from asserting her rights thereunder, the judgment against her must be reversed. She is entitled to recover any amounts paid pursuant to attachments before judgment.

So ordered.

4. We are aware that a finding of estoppel is one of fact and may only be overturned when but one inference can be drawn from all the evidence. United Securities Corp. v. Verene, D.C.App., 193 A.2d 429 (1963); Hardison v. Shirlington Trust Co., D.C.Mun.App., 148 A.2d 88 (1959). Judge Walker did not have the contract before him. When it was subsequently introduced, the record contained no competent evidence to support an estoppel. For the requisite elements of an estoppel, see Parker v. Sager, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1949).

5. Associates Discount Corp. v. Lunsford, 204 Va. 1, 128 S.E.2d 924 (Sup.Ct.App. 1963).

6. Although as between the original payee and the accommodation maker, the defense of lack of consideration may be asserted, once the obligation has been negotiated to a holder in due course, the accommodation maker is primarily liable. 11 Am.Jur.2d Bills and Notes §§ 525, 530, 536, 539, 660 (1963).