Joyce CASSIDY, et al., Appellants,

v.

Thornton W. OWEN, Jr., et al., Appellees.

No. 84–839.

District of Columbia Court of Appeals.

Submitted Nov. 12, 1986.

Decided Nov. 16, 1987.

Kurt Berlin, Washington, D.C., was on the brief for appellants.

Richard W. Luchs, Washington, D.C., was on the brief for appellees.

Before MACK and NEWMAN, Associate Judges, and REILLY, Senior Judge.

NEWMAN, Associate Judge:

Joyce Cassidy, Shirley Nicholson, and Laura Gardner,[1] joint owners of improved real property in the District of Columbia, appeal a grant of summary judgment against them in their action in Superior Court for wrongful foreclosure. They contend that a genuine issue of material fact exists as to their claim. We agree, reverse, and remand for further proceedings.

I

Viewing the evidence in a light most favorable to Cassidy, as we must, *Truitt v. Miller*, 407 A.2d 1073, 1077 (D.C.1979), the facts are as follows:

Cassidy, Nicholson, and Gardner together inherited property subject to a note which was held by appellee National Permanent Federal Savings and Loan Associa-

---

1. We shall hereinafter refer to appellants collec-    tively as "Cassidy."

tion (hereinafter "Bank") and secured by a deed of trust on the property. The note had fallen into arrears when Cassidy received from the Bank a "Notice of Foreclosure Sale" dated September 17, 1982. The Notice listed a balance owed of $2,551.11, and stated that a foreclosure sale would be held on October 20, 1982. Cassidy then contacted Samuel Marsh, attorney representing the Bank, and was told that to stop the sale, she would have to pay the balance due on the note, plus $800 in legal fees incurred by the Bank.

On October 3 or 4, 1982, Cassidy received in the mail a copy of a letter dated October 1, 1982 from Marsh's law firm to appellees Thornton Owen, Jr. and Thomas Kay, trustees of the deed of trust, notifying them of the foreclosure sale and requesting them to publish an advertisement of the sale in the *Washington Post* on October 8, 12, 14, 16, and 19. Enclosed with the copy of this letter was another document entitled "Total Amount Due to Withdraw Foreclosure Proceedings," which itemized expenses totaling $5,006.80. Among these expenses were advertising costs of $1,003.75 which, since the ads had not run yet, could not have been incurred as of that time.[2]

Sometime after her receipt of this document, Cassidy called and spoke with Marsh, who confirmed that she would have to pay $5,006.80 to prevent the sale. She only had about $3,000 at the time. She did not tender this amount because, in light of Marsh's demands, she believed such an offer would be futile. She tried to reach her own attorney, but he was out of town. Not knowing how else to keep her property, she sent her husband to the sale on October 20th with the $3,000, and told him to bid for the property at auction. This he

did, successfully bidding in at $15,000. The $3,000 was posted as deposit, and a settlement date arranged.

At the settlement meeting on December 3, 1982, however, Cassidy changed her position and declined to settle. She now claimed that the foreclosure had been wrongfully held since the Bank, in the enclosure received by her on October 3rd or 4th, had stated a pay-off figure that was inflated with expenses that had not yet been incurred. She now offered the $3,000 as deposit in payment of all appropriate charges to redeem the property. The bank refused this offer, declared Cassidy's auction deposit forfeit, and scheduled a new foreclosure sale for March 9, 1983.

Cassidy obtained a temporary restraining order in Superior Court the day before the scheduled second sale, but her subsequent motion for preliminary injunction was denied after an evidentiary hearing, based in part upon the availability of a remedy at law. After her property was sold at the second foreclosure sale held on March 28, 1983, Cassidy was granted leave to file an amended complaint seeking damages. Among other things, her amended complaint alleged wrongful foreclosure, claiming that the Bank had engaged in conduct designed to mislead her as to the amount necessary to redeem her property.[3] The Bank moved for summary judgment, contending that no facts necessary to a decision on the wrongful foreclosure issue were in dispute. It argued that the question of whether or not Cassidy had received the pay-off statement from the Bank on October 3rd or 4th was not material, because even if she was not apprised of the correct pay-off amount, she knew that she was obligated to tender some amount to stop the sale. Since she admittedly made

---

2. At the hearing on the preliminary injunction, Worthington Talcott, Jr., an attorney in Marsh's firm, categorically denied that his office had ever sent this enclosure to Cassidy. He claimed to have related the figures contained therein for the first time on October 18th to an individual calling on behalf of Cassidy. As to the advertising figures contained in the enclosure, he testified that he was not aware of these costs until October 14th at the earliest, and that, in fact, they could not possibly have been calculated

before October 8th, since advertising charges are not known until the first day they appear in the newspaper.

3. Cassidy's amended complaint also alleged improper substitution of trustees and breach of fiduciary duty of the trustees, and demanded an accounting; the trial court's ruling against her on these counts of her complaint are not at issue in this appeal.

no tender at all though able to do so, foreclosure was authorized by the terms of the deed of trust, and the foreclosure sale was properly held. Agreeing with these contentions, the trial court granted summary judgment for the Bank.

## II

Summary judgment is properly granted only when the pleadings and other materials on file demonstrate that no genuine issue of material fact remains for trial, and that the movant is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). "Any doubt as to whether or not an issue of fact has been raised is sufficient to preclude a grant of summary judgment." *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1259 (D.C.1983). On reviewing a summary judgment ruling, our function is to determine whether any genuine disputes of fact exist; if so, the grant of summary judgment must be reversed and trial held on those issues. *Id.; Truitt, supra*, 407 A.2d at 1077.

■ Cassidy's claim of wrongful foreclosure is based upon an equitable estoppel by representation theory.[4] The elements of an equitable estoppel claim are: (1) conduct amounting to a false representation or concealment of material fact (2) made with actual or constructive knowledge of the true facts, and (3) with the intention that another person act in reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge concerning the truth of the representation, (5) and his reliance upon the misrepresentation, (6) causing him to act so as to change his position prejudicially. *American Century Mort-*

*gage Investors v. Unionamerica Mortgage and Equity Trust*, 355 A.2d 563, 565 (D.C. 1976); *Parker v. Sager*, 85 U.S.App.D.C. 4, 8, 174 F.2d 657, 661 (1949) (citation omitted). "It is not essential to the creation of an equitable estoppel ... that the party sought to be estopped should have had an actual intent to deceive, defraud, or mislead. Nor is it essential that the representation or conduct relied upon be motivated by actual malice." 28 Am.Jur.2d *Estoppel and Waiver* § 41, at 648 (1966) (footnotes omitted).[5]

■ Cassidy admits that she did not tender any amount previous to the first foreclosure sale, but argues that her failure to do so was the result of having received from the Bank inflated and misleading information as to the amount necessary to redeem her property. A tender of $3,000, she contends, seemed a "vain and useless act" when the amount demanded was over $5,000. She argues that because her failure to tender was induced by the Bank's own misrepresentation, the Bank was estopped from insisting upon tender before the sale, and the sale was wrongfully held.

These allegations, if proven at trial, could lead a trier of fact to conclude that the Bank was equitably estopped from foreclosing on the property. They raise material factual issues with respect to several of the elements of an equitable estoppel claim. The first such issue, of course, is whether the Bank did, in fact, send Cassidy a statement misrepresenting the payoff costs (element number one). This was a contested issue throughout the proceedings below, *see supra* pp. 253 & 254 &

4. Although the estoppel claim is explicitly argued for the first time on appeal, Cassidy's pleadings and arguments below raised what is the essence of the theory: that her failure to tender in time to redeem her property was the result of her reliance upon the Bank's misrepresentation of the amount necessary, and that, therefore, the foreclosure was wrongful. *See Semaan v. Mumford*, 118 U.S.App.D.C. 282, 284 n. 7, 335 F.2d 704, 706 n. 7 (1964) ("Although the estoppel theory was not explicitly argued below, it was plainly encompassed by the pleadings and was clearly a 'discernible circumstance' from the record before the court.").

5. Although traditionally asserted as a defense, or as a defense to a defense (such as statute of limitations or statute of frauds), equitable estoppel may also be asserted as a ground for affirmative relief. *See, e.g., Investors Syndicate v. City of Indian Rocks Beach, Fla.*, 434 F.2d 871, 879–80 (5th Cir.1970) (equitable estoppel most often a defensive pleading, but is a valid basis for cause of action); 31 C.J.S. *Estoppel* § 148, at 734–35 (1964) (equitable estoppel "may be asserted as a ground for affirmative relief" to protect a right) (citing cases); *contra, First Federal Savings & Loan Ass'n. v. Perry's Landing*, 11 Ohio App.3d 135, 463 N.E.2d 636, 650 (1983).

note 2, and should have been submitted to the trier of fact. An evaluation of her estoppel claim requires that this factual question be tried by the court on remand.[6]

If the trial court finds as a matter of fact that the Bank misrepresented the pay-off amount, a determination on Cassidy's wrongful foreclosure claim will require resolution of factual issues with regard to elements four and five as well.[7] These elements, both interrelated, focus on the reasonableness of Cassidy's reliance on the allegedly inflated pay-off amount. A person claiming estoppel by misrepresentation must have *reasonably* relied on the misrepresentation. 31 C.J.S. *Estoppel* § 78, at 461 (1964).

> One who claims the benefit of an estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection. A lack of diligence by a party claiming an estoppel is generally fatal. If the party conducts himself with careless indifference to means of information reasonably at hand, or ignores highly suspicious circumstances, he may not invoke the doctrine of estoppel.

28 AM.JUR.2d *Estoppel and Waiver* § 80, at 721 (1966) (footnotes omitted).

The reasonableness of the reliance upon a misrepresentation is a question of fact, for which disposition by summary judgment is generally inappropriate. *Begnaud v. White,* 170 F.2d 323, 326–27 (6th Cir. 1948) (summary judgment on equitable estoppel claim precluded by existence of issue of fact as to whether party who delayed filing suit past limitations period did so because of reliance upon representations of adverse party indicating willingness to settle); *Delson v. Minogue,* 190 F.Supp. 935 (E.D.N.Y.1961) (same); *see generally Markus v. Penn Mutual Life Insurance Co.,* 128 U.S.App.D.C. 368, 374, 389 F.2d 538, 544 (1967) (Leventhal, J., dissenting) ("The function of the trier of facts lies not only in resolving disputes as to the evidentiary facts, but also ... in drawing inferences and applying normative standards, such as, whether the conduct described was 'reasonable.' ") (citations omitted)). Although reasonableness is normally an objective standard, courts assessing claims of equitable estoppel may take into account subjective factors such as the relative lack of knowledge and experience of a party, and the good faith of the reliance. *See, e.g., First Federal Savings and Loan, supra* note 5, 463 N.E.2d at 648. No evidence pertaining to these factors was presented at the hearing on the preliminary injunction. On remand, if the trial court finds that Cassidy did receive a statement containing inaccurate redemption figures, it should take these factors, if present, into account in determining whether her reliance on the statement was reasonable.

*Reversed and remanded for further proceedings.*

REILLY, Senior Judge, dissenting:

Notwithstanding the lucid analysis of the evidence in the majority opinion, I am unable to agree with its conclusion for it seems to rest on a misapplication of the rules relating to the propriety of summary judgment. I do not question that the essence of Super.Ct.Civ.R. 56 is correctly summarized by my colleagues in their statement that:

> Summary judgment is properly granted only when the pleadings and other materials on file demonstrate that no genuine issue of material fact remains for trial and that the movant is entitled to judgment as a matter of law.

But what appellants cite here and in the motions court as raising a genuine issue of material fact is evidence already received at the trial, not something that "remains for trial." Granted the "facts" recited in the testimony of one of the appellants, Mrs. Cassidy, were certainly disputed by other witnesses, the question before the motions

---

6. Since Cassidy did not request a jury trial, we need not decide whether a claim for damages grounded in equitable estoppel is triable of right to a jury.

7. In its present posture, there seems to us to be no dispute as to elements two or three. The trial court must make its own ultimate judgment on these two elements as well as trial.

court was a simple one, *viz.:* assuming the Cassidy testimony was true, were the facts established thereby material in view of a record showing that at no time did Cassidy or any of the other appellants make a tender of the undisputed sum due the holder of the mortgage note—the unpaid balance mentioned in the foreclosure notice. This was precisely the point that the principal appellee argued in moving for summary judgment. The motions court in granting the motion "for the reasons argued by Mr. Luchs [counsel for the defendant bank]" clearly considered this question and decided that it was not.

Hence, the only issue before us on appeal is not whether the bank "did in fact, send Cassidy a statement, misrepresenting the pay-off costs"—a matter on which there was a sharp conflict of testimony—but whether the court after accepting the foregoing as a fact, erred in holding it immaterial. The majority apparently would have arrived at a contrary holding in view of its willingness to entertain the belated argument that the bank was estopped by the conduct of its agents from raising the tender issue, but then goes on to recognize that even if there had been a misrepresentation, it was necessary also for appellants to prove reasonable reliance upon it by the party invoking the doctrine of estoppel. As the majority noted:

> One who claims the benefits of an estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection. A lack of diligence by a party claiming an estoppel is generally fatal. If the party conducts himself with careless indifference to means of information reasonably at hand, or ignores highly suspicious circumstances, he may not invoke the doctrine of estoppel.

28 AM.JUR.2d *Estoppel and Waiver* § 80, at 721 (1966) (footnotes omitted).

After making this point, the majority observes that because the reasonableness of an asserted reliance is a question of fact, disposition by summary judgment is "generally inappropriate ..." and that "courts in assessing claims of equitable estoppel may take into account subjective factors such as the relative lack of knowledge and experience of a party, and the good faith of the reliance."

While these foregoing observations have some validity, the majority in applying them to this case makes an assertion lacking in record support: "No evidence pertaining to these factors was presented at the hearing on the preliminary injunction."

But one of the findings of Judge Bacon, who presided at that hearing, reveals that both parties in their testimonial presentation drew such factors to her attention. She found, *inter alia,* that:

> Plaintiffs have some knowledge of real estate matters, and, accordingly, their contention that they had been given incorrect figures with respect to the balance due to stop the foreclosure proceedings with respect to 2260 Mount View Place, S.E. which took place in October 1982 is not persuasive as justification for their failure to make payments on the promissory note when due.

Before preparing the written findings and order, the court, from the bench in explaining her reasons for denying injunctive relief said:

> The court specifically finds in this case that plaintiffs do not establish sufficient likelihood of success on the merits to entitle them to preliminary relief. Obviously, the persons who are before the court have some knowledge and understanding of real estate matters; during the course of these events they had a person by the name of Mr. Sarna or Sarma dealing on behalf of them. They are seeking out Mr. Berlin's services. In the course of this litigation they elected to proceed on a buy-in having sought some type of advice with regard to doing that.

Thus, by the time the motions court (Judge Murphy) conducted the hearing on the motion for summary judgment, the question of good faith reliance cited by appellants in their opposition to summary judgment as presenting a genuine issue of material fact had already been decided ad-

versely to them by the judge, who had heard all the testimony bearing on this question. As appellants offered nothing at the hearing before Judge Murphy except the transcript of evidence in the preliminary injunction proceedings to show that a genuine issue of material fact remained undetermined, it was certainly no error for Judge Murphy to defer to Judge Bacon's finding on this point, irrespective of whether he was bound by such finding under the law of the case doctrine.[1]

Accordingly, I submit that the order granting summary judgment should be affirmed.

---

1. Cf. *United States v. Dockery,* 294 A.2d 158 (D.C.1972); *Jenkins v. United States,* 284 A.2d 460 (D.C.1971).