## ASTIN et al. v. PHILLIPS.
### No. 683.

Municipal Court of Appeals for the
District of Columbia.

Reargued May 9, 1949.

Decided June 3, 1949.

Nathan H. David, Washington, D. C., with whom French & Briscoe, Washington, D. C., were on the brief, for appellants.

H. Max Ammerman, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiffs, tenants of an apartment house, sued their landlord for damages for his alleged refusal to render services required by the applicable minimum service standard under the provisions of the District of Columbia Emergency Rent Act.[1] From a judgment in favor of the landlord the tenants have appealed.

The record shows that originally all units in the apartment house were rented unfurnished, and that in 1944 when three apartments became vacant the landlord filed a petition for an adjustment of the rent ceiling on those units, alleging that they had been furnished and would be supplied with linens, maid service, laundry, and complete hotel service, and asking that daily and weekly rates be fixed for the units on the basis of single and double occupancy. Later the landlord amended his petition to include all units of the building, to be furnished as and when they became vacant. This amendment sought daily, weekly, and monthly rates. The hearing before the examiner was ex parte, as there were then no tenants occupying furnished apartments. The examiner's findings, recommended order and notice reads as follows:

"The above entitled case having been referred for examination, hearing, findings and recommendation, and upon consideration of the record and evidence adduced, the

---

[1] Code 1940, Supp. VI, 45—1610(a).

following findings of fact are made this ——day of Jan. 9, 1945, 194—:

1. It is found that all of the housing units in 1112 16th Street, N.W., were rented on January 1, 1941 at the rentals set forth in schedule A. R. C. 20 filed herein on November 2, 1942.

2. It is found that the minimum service standard on January 1, 1941 did not include furniture or furnishings and did include janitor, elevator, laundry facilities, package room, resident manager, storage space, switchboard, gas, electricity, refrigerator, heat and hot water.

3. It is found that several units have become vacant and have recently been furnished with furniture valued by petitioner at about $1060, per unit.

4. Petitioner avers that he desires to rent said units on a daily transient basis and when other units become vacant to furnish them and rent them on a daily transient basis.

5. That the daily rates apply only to furnished units and these units have a minimum service standard which includes maid service, laundry service for bed linens and towels, and the furnishings include dishes and kitchenware.

and accordingly, the following is recommended:

Ordered: that effective Jan. 20, 1945, and after the end of the existing tenancies the Maximum Rent Ceilings for furnished units in premises No. 1112 16th Street, N. W., shall be as set forth in the copy of the order attached hereto and hereby made a part hereof with the minimum service standard as described in findings No. 2 and No. 5.

(Signed) Ernest F. Williams, Examiner.

Notice

The above findings and order will be deemed to be the findings and order of the Administrator on the effective date set forth therein unless a request in accordance with either Rule 20 or Rule 21 is filed prior thereto. Copies of these Rules may be obtained from the Secretary-Docket Clerk."

Attached to the examiner's findings was a form of order fixing rents on all units on a daily basis and a monthly basis. The daily basis was limited to the first thirty days and fixed rates for single and double occupancy. The monthly basis was unlimited in time and was not dependent on the number of occupants. For example, Unit No. 1 was given a daily rate of $6 for single and $8 for double occupancy, with a monthly rate of $90. The Administrator signed the order fixing the rates, reciting that it was signed "upon consideration of pertinent data."

The plaintiffs in this case all became tenants after the signing of the above order and occupied furnished apartments as monthly tenants, paying the monthly rates provided in such order. They rest their claims for violation of the minimum service standard on the following: (1) The furniture supplied with each of their apartments was not of the value of $1,060. (2) The landlord did not furnish bed and table linens, bath towels, soap, blankets and other bed coverings, bedspreads, dishes, silverware, and cooking utensils. (3) The landlord did not furnish maid service and laundry service for bed linen and towels.

The landlord contends that no valid minimum service standard has been established for the furnished apartments. He argues that when the unfurnished apartments were furnished there were created new and different housing accommodations under the doctrine of Delsnider v. Gould, 81 U.S.App. D.C. 54, 154 F.2d 844; that this being so there could be no minimum service standard for the furnished apartments until one was determined by the Administrator under section 2 of the Rent Act, D.C.Code 1940, § 45—1602; that this could not be done as was attempted to be done by an adjustment under section 4 of the Act, D.C.Code 1940, § 45—1604; and that under the holding of this Court in Sager v. Parker, D.C.Mun. App., 55 A.2d 349, there was lacking in this case the required affirmative action by the Administrator necessary for the establishment of a new or original service standard.

When this case was first argued here there was then pending in the United States Court of Appeals for the District of Columbia an appeal from our decision in Sager v. Parker, supra, and the tenants, questioning

the soundness of that decision, suggested withholding decision in the instant case until the appeal in Sager v. Parker was decided. We acceded to that suggestion. On April 25, 1949, the United States Court of Appeals affirmed our decision in Sager v. Parker.[2] We then permitted reargument of this case and now the tenants say that Sager v. Parker is distinguishable from the present case on the following grounds: (1) In the Sager case it was clear that the proceeding was under section 2 of the Act, whereas in the present case there was not sufficient evidence that the apartments as furnished constituted new housing accommodations; (2) that in the Sager case the Administrator took no affirmative action, whereas here the Administrator signed the order fixing the rents and thereby, impliedly at least, approved the service standard on which such rents were based; and (3) that unlike the Sager case the landlord in this case successfully maintained his position before the Administrator and obtained rent increases, and cannot now take the position that the proceeding before the Administrator was invalid in so far as it established service standards.

We do not find it necessary to determine whether Sager v. Parker is applicable to or is distinguishable from the present case, for we are of the opinion, as was the trial court, that, assuming the examiner's findings, recommended order, and notice to be valid and effective as an order of the Administrator, there is no showing of a violation of the minimum service standard.

■ The tenants' chief claim to a denial of services rests on their claim that they were entitled to the services specified in the examiner's finding No. 5, but we think it clear that those services applied only to those units rented on a daily or hotel basis. The record plainly indicates that the landlord planned to furnish a number of rooms and rent them to transients, supplying customary hotel services and that it was for such cases that the daily rates were fixed. The order signed by the Administrator obviously referred to the transient or hotel features. It required that a copy be posted "at or near the registry desk in plain view of all guests," that a "room register" be kept, showing the names of the occupants and "the time of arrival and departure of each guest." Such expressions and such requirements have no application to monthly tenants and obviously were not intended to apply to the plaintiffs.

It is true that the order specifies monthly rates for the furnished apartments and that the plaintiffs have been paying those rates, but it would require a strained and impractical construction of the examiner's findings and recommended order, or of the Administrator's order based thereon, to hold that the monthly tenants were entitled to the same services provided for the daily or transient guests. The proceedings were somewhat irregular and the findings and order were not stated with clarity and preciseness, but in our opinion the only reasonable construction is that the guests paying on a daily basis were entitled to the services named in finding No. 5, and the monthly tenants in addition to the furniture and furnishings were entitled to the services specified in finding No. 2.

■ The tenants claim also that there was a violation of the service standard because the furniture in each of their apartments was not of the value of $1,060, the value given by the landlord. The furnishing of furniture is a service under the Rent Act, but we do not think that proof that furniture is of less value than the value placed thereon by the landlord proves a violation of the service standard. If the landlord deliberately overvalued the furniture, he may be guilty of some offense but overvaluation is not a refusal to render services. Furthermore, the valuation by the landlord was made prior to actual installation in the majority of the units and was stated to be the value of that which he proposed to install, and included furnishings intended only for transient guests. Perhaps the Administrator should have waited until the apartments were actually furnished and have examined them before fixing the rents. The value of the furniture may be considered in fixing rents, but it is the furniture, and not the value of it, which constitutes the service. If the ten-

---

[2] Parker v. Sager, D.C.Cir., 174 F.2d 657.

ants felt that the apartments as furnished did not warrant the maximum rent, they should have applied to the Administrator for a reduction in rent, as they are permitted to do under section 4(e) of the Act.[3]

The judgment of the trial court was correct and is affirmed.