## DOUGLAS M. HEAD, ATTORNEY GENERAL, AND OTHERS v. SPECIAL SCHOOL DISTRICT NO. 1 AND OTHERS.

208 N. W. 2d 294.

June 1, 1973—Nos. 43687, 43742.

*Oppenheimer, Brown, Wolff, Leach & Foster, Richard H. Murray,* and *John H. Wolf,* for appellant association.

*Lindquist & Vennum* and *Norman L. Newhall,* for appellant school board.

*Earl H. A. Isensee,* for intervenors.

OTIS, JUSTICE.

This appeal stems from a teachers' strike which occurred in the Minneapolis school system in April 1970. The litigation now before us was severed from that which we considered in Head v. Special School Dist. No. 1, 288 Minn. 496, 182 N. W. 2d 887 (1970), certiorari denied sub nom. Minneapolis Federation of Teachers, Local No. 59 v. Spannaus, 404 U. S. 886, 92 S. Ct. 196, 30 L. ed. 2d 168 (1971). That case dealt with the validity of compensation paid to teachers who had been on strike, while the issue in the instant case is limited to the question of which of some 600 teachers took part in the strike. The trial court held that all teachers who had not previously been granted leave of absence but failed to report on April 9 or April 10, 1970, were strikers as a matter of law, notwithstanding they had executed an affidavit prepared by the school board in which they denied that during their absence they were engaged in a strike as defined by Minn. St. 1969, § 179.51. It was the opinion of the trial court that the teachers were not entitled to the hearing provided by § 179.56 because they were content to file an affidavit in lieu of that hearing. We reverse on the ground the filing of the affidavits did not as a matter of law constitute a waiver of the right to hearing conferred by statute.

These proceedings were originally begun by the attorney general to obtain a declaratory judgment which would nullify two resolutions adopted by the Minneapolis School Board with respect to compensating teachers who had been on strike. These issues were disposed of in Head v. Special School Dist. No. 1, *supra*. Parties-defendant, in addition to the school board, were the Minneapolis Federation of Teachers and the City of Minneapolis Education Association. With leave of the court, various individual taxpayers were permitted to intervene as parties-plaintiff to contest the method used to determine which teachers were on strike.

The parties have stipulated to the facts. Negotiations concerning the teachers' contracts had been carried on for many months

prior to April 1970 without reaching an agreement. On April 6, 1970, the Federation voted to conduct a strike on April 9. The following day the Association voted not to strike but on April 8 formally petitioned the school board to grant a leave of absence on April 9 and 10 to all of its members. Thereupon, the board adopted a resolution rescinding all leaves of absence.

On April 9 and 10, 1,200 teachers reported for work and 2,200 did not. It is undisputed that some 1,600 members of both the Federation and Association were strikers in violation of § 179.51 and have suffered the penalties which the statute imposes.[1] This litigation is to determine the status and rights of the remaining 600 teachers who were absent on April 9 or 10 but claimed to be exercising their right to a leave of absence for purposes other than those of participating in a strike.

The Minneapolis schools were closed from April 13 to April 29 by action of the school administration, ratified by the school board. The board notified all of the teachers who were absent on April 10 that it regarded them as being on strike that day. Pursuant to an action brought by the Association on April 22, the district court on April 27 held that the board had no authority to cancel its leave-of-absence policy. On the following day the board adopted Resolution C, the validity of which is at issue in this litigation. The strike thereupon ended, and on April 29 the teachers returned to work.

Resolution C was adopted upon the advice of the attorney general whose opinion the board had solicited regarding the necessity for granting each teacher an individual hearing. That opinion stated, among other things, that—

"* * * the board may limit the initial business of the hearings to receipt of evidence, in affidavit form, provided for the purpose of showing that the teacher 'did not violate the provisions of sections 179.51 to 179.58.' M.S. 1967 § 179.56. Upon such presentation of evidence we see no reason why the hearings may not be continued so that the initial evidence may be reviewed and

---

[1] Minn. St. 1969, §§ 179.54, 179.55.

reasonable further proceedings be established and notice thereof given to all parties * * *." [2]

Resolution C, adopted by the board on April 28, and the affidavit which it submitted to the teachers provided as follows:

"WHEREAS, the District Court of Hennepin County has entered an Order ruling that the Board action taken on April 8, 1970, to empower the superintendent to cancel personal leave was invalid for want of proper prior notice of intent in accordance with the Bylaws of the Board; and

"WHEREAS, the Board's attorneys advise that in their judgment this ruling is technically correct and would be sustained on appeal; and

"WHEREAS, this restores the possibility of personal leave to teachers for the days of April 9 and 10, 1970; and

"WHEREAS, many teachers have requested a hearing on the matter of whether or not they are in violation of Section 179.51, Minnesota Statutes, called the 'no-strike law', and others are expected to file such request for hearing; and

"WHEREAS, the Board wishes to be sure that it treats all of its teachers fairly and in accordance with the law and uniform rules for application to all teachers who are in the same situation; and

"WHEREAS, the Board has announced the opening of schools for Wednesday, April 29, and has assured all of its teachers that those who return to work at that time will be rehired in accordance with the law; and

"WHEREAS, the Board believes that there may be teachers absent from school on April 9 and 10 who were taking personal leave on those days and did not participate in strike activities;

"Now, THEREFORE, IT IS RESOLVED AS FOLLOWS:

"1. All teachers reporting to work on April 29, 1970, who have previously been terminated, will be given an opportunity to sign an affidavit to the effect that they were taking personal

---

[2] Although the resolution was adopted on April 28 and the attorney general's opinion was dated April 29, it is conceded that the board had advance notice of the contents of the opinion.

leave on April 9 and 10 and have not participated in the strike. Affidavits in the form attached hereto will be available at each school.

"2. The board, subject to paragraph 3 following, will accept such affidavits as proof of the facts stated and conclude that those teachers have not been in violation of the law. Those teachers will be hired on next year's salary schedule and will be reimbursed for time lost during the strike.

"3. If the Board should have specific and definite evidence contradicting any affidavit, it reserves the right to require, as to that teacher, a full hearing in accordance with Section 179.56, Minnesota Statutes.

"4. Teachers who had used up all or part of their personal leave prior to April 9, and who sign the affidavit, will be afforded a hearing under Section 179.56 if they specifically request it.

"Approved by Board of Education, April 28, 1970."

"State of Minnesota
County of Hennepin—ss:

"AFFIDAVIT

" .............................. ..., being first duly sworn, deposes and says:

"1. As a teacher in the Minneapolis school system, I elect to take personal leave as to any absence from work by me on April 9 or 10, 1970. This personal leave was taken for important personal business, not of a recreational nature, and which could not be conducted on a non-duty day.

"2. I have not, at any time since April 8 to the present, been engaged in a strike as defined in 179.51, Minnesota Statutes.

"Signed ..... ..  ................... ...... . .

"Subscribed and sworn to before me, a Notary Public, this ...... day of April, 1970. ............ ..... ............ Notary Public."

Approximately 590 teachers filed affidavits certifying that

they elected to take personal leave of absence on April 9 or 10 and were at no time on strike subsequent to April 8. On May 26, the school board, by resolution, decided to make public the names of those who filed affidavits with a view to eliciting evidence, if any, in contradiction of the affidavits. The resolution provided that all affidavits which were unchallenged by June 8 would be accepted as true and the teachers filing them would be exonerated without a hearing. Twenty-two affidavits were challenged. As a result hearings were conducted in private at the teachers' request. Counsel for each side and a reporter to transcribe the testimony were present. The Honorable Levi M. Hall, retired district judge, served as hearing examiner. He found that 5 of the teachers were strikers and 17 were not. His findings were adopted by the school board at subsequent meetings which were privately conducted. Pursuant to Resolution C, the remaining teachers who filed affidavits were determined by the board not to be strikers.

The personal leave policy, which the teachers invoked to justify their absence on April 9 and 10, provides as follows:

"POLICY

RELATIVE TO

PERSONAL LEAVE

"Effective September 1, 1968, two noncumulative personal leave days, deducted from sick leave, shall be granted each year for incidents involving special obligations or emergencies which cannot be scheduled on non-duty days and are not authorized under other leave provisions. Such days shall be granted according to the following guidelines:

"A satisfactory explanation and prior approval by the superintendent shall be necessary if the personal leave day requested falls on a day immediately preceding or following school holidays and recess periods.

"Personal leave days taken at other times shall require no explanation, except as provided in the next paragraph. The teacher shall, however, state in writing that the leave is to be taken

for important personal business, not of a recreational nature, that cannot be conducted on a non-duty day.

"The administration reserves the right to require a satisfactory explanation and prior approval in individual cases of requests for personal leave days to be taken on Mondays or Fridays.

"In emergency situations written requests for personal leave may be submitted after the fact. It is understood that the teacher will assume the responsibility in such an emergency of notifying his building principal at the earliest possible time of his anticipated absence."

1. At the school board's meeting on April 8, the superintendent of schools stated that it would be "in great violation" of the personal leave privilege to sanction mass absence from the classrooms on April 9 as the Association had requested. On April 17 it notified all teachers that those who were absent April 10 were deemed to be strikers. After canceling all leaves of absence, the board restored the policy only when directed to do so by the district court. It is difficult to reconcile the board's action canceling leaves of absence with the invitation contained in Resolution C to use the leave of absence policy as a device to avoid the penalties imposed by statute for participating in the strike. The board justifies its procedure by underscoring its obligation and the public's interest in keeping its schools open. Resolution C was conceded to be a matter of expediency and an inducement to bring the strike to an end.

There is merit in the position of the intervenors that where a strike is called for a particular day and teachers request a leave of absence for that same date, and without a leave of absence, fail to report, the inference that they were participating in a strike is persuasive. The applicable statute, Minn. St. 1969, § 179.51, provides as follows:

"No person holding a position by appointment or employment in the government of the State of Minnesota, or in the government of any one or more of the political subdivisions thereof, or

in the service of the public schools, or of the State University, or in the service of any authority, commission, or board, or any other branch of the public service, hereinafter called a 'public employee' shall strike, or participate in a strike. As used in sections 179.51 to 179.58 the word 'strike' shall mean the failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in the conditions or compensation or the rights, privileges or obligations of employment."

The affidavits which were submitted to the teachers constitute conclusions of law and not recitations of fact from which either the school board or the court could determine the critical issue of whether a particular teacher was, in fact, absent for the purpose of inducing the board to come to terms with the teachers' contract negotiators. We agree with the trial court that acceptance by the board of these self-serving affidavits was unwarranted in the absence of any further showing of what prompted the individual leaves of absence and the activities in which each teacher was engaged on the days he or she was absent. We are of the opinion that under all the circumstances recited it was incumbent on those teachers who asked for a leave of absence to make an affirmative showing that their absence was wholly unrelated to the purposes proscribed by § 179.51.[3]

It is argued by the teachers' association that there were a variety of reasons for their absence. They allege that students were out of hand and teaching had become impossible. Some feared for their physical safety in crossing picket lines. Others simply wished to avoid a confrontation with professional colleagues who were on the picket line. Some wished to call attention to the problems of public education. Others, it is argued, took leaves of absence for "important personal business" wholly unrelated to the strike.

---

[3] See, Minn. St. 1969, § 179.56.

The difficulty we have in the posture of the issues before us is that in holding that the factfinding process employed by the board was inadequate, we are not prepared to indicate precisely what procedures would satisfy the statute. We do not agree that by accepting the board's proposal to file affidavits the teachers have waived their right to the hearing which they expressly requested. It would be unjust to foreclose that right simply because they have accepted their employer's assurance that the process the employer proposed would be satisfactory to it. To find a waiver would impose too harsh a penalty for failing to anticipate that these procedures would ultimately be found invalid. Because in our opinion the teachers are entitled to a hearing on whether or not they were in violation of Minn. St. 1969, § 179.51, we reverse. In so doing we recognize that the task of determining the issues on an individual basis is a formidable one. Be that as it may, the statute requires a private hearing if a teacher so elects and of necessity we leave the mechanics of that process to the parties involved.

2. Two other matters deserve comment. First is the question of whether the proceedings of the board in determining the status of each teacher should have been conducted at a public or a private meeting. Minn. St. 125.17, subd. 7, provides:

"All hearings before the school board shall be private or may be public at the decision of the teacher against whom such charges have been filed."

The status of the teachers who had been accorded hearings was determined without making the grounds therefor a matter of public record. Intervenors cite § 471.705 as requiring that the meetings of the board should have been public, while the trial court found the board's procedure invalid because the court construed § 125.17, subd. 8,[4] to require that the board render deci-

---

[4] Minn. St. 125.17, subd. 8, provides: "Such hearing must be concluded and a decision in writing, stating the grounds on which it is based, rendered within 25 days after giving of such notice. Where the hearing is before a school board the teacher may be discharged or demoted upon

sions in writing, state the grounds therefor, and announce the decisions publicly. However, we are of the opinion and hold that it was quite clearly the intention of the legislature that the hearings before the school board were to be private if the teachers so elected and that the board's deliberations in reaching their decisions were to remain confidential.

3. Finally, the intervenors with justification express misgivings concerning the vigor with which the school board will obtain and scrutinize evidence affecting the status of individual teachers. Having in good faith made a proposition to the teachers which they accepted, the board, it is argued, cannot be expected to assume the role of a true adversary in conducting its hearings. Since the statute requires that if the teacher requests a private hearing it must be granted, we question the propriety of permitting intervenors to participate in those hearings. Because the board's counsel actively participated in all of these negotiations, it would now be difficult for them to contest the teachers' claims with the vigor which is traditionally required of trial lawyers. Without in any way impugning the ability or integrity of counsel but to avoid the inevitable embarrassment attendant on their conducting these hearings, we suggest that the school board retain independent counsel to investigate the facts, to recommend methods of procedure, and to represent the school board at its hearings with a view to insuring that the teachers have strictly complied with the policy of the statute and to protect not only the interests of the school board but those of the intervenors as well. We can assume that intervenors will cooperate by furnishing the board with any evidence available to them which may have a bearing on the activities of particular teachers during

the affirmative vote of a majority of the members of the school board. If the charges, or any of such, are found to be true, the school board conducting the hearing shall discharge, demote, or suspend the teacher, as seems to be for the best interest of the school. No teacher shall be discharged for either of the causes specified in subdivision 4, clause (3), except during the school year, and then only upon charges filed at least four months before the close of the school sessions of such school year."

the strike. In addition, at a public meeting of the school board the decisions regarding individual teachers will be announced and the intervenors will have a further opportunity to be heard if they are not satisfied with the results. If this procedure is followed, we are confident that any possible conflict of interest which may face the school board in dealing with its teachers will be avoided, and the purposes and policy of the "no-strike" statute fulfilled.

Accordingly, the matter is reversed and remanded for further proceedings consistent with the decision we here reach.