PATRICIA WHALEN AND ANOTHER v.
MINNEAPOLIS SPECIAL SCHOOL DISTRICT NO. 1.

245 N. W. 2d 440.

July 2, 1976—Nos. 46837, 46858.

*Lindquist & Vennum, N. L. Newhall,* and *Jerrold F. Bergfalk,* for appellant.

*Peterson, Engberg & Peterson, Roger A. Peterson,* and *Bruce P. Grostephan,* for respondents.

*Peterson, Popovich, Knutson & Flynn, Peter S. Popovich,* and *Richard J. Sands,* for Minnesota School Boards Assn., amicus curiae, seeking reversal.

PER CURIAM.

These proceedings challenge the validity of a discharge by the Minneapolis Board of Education of two of its tenured teachers, respondents Patricia Whalen and Wayne Bigelow. On reviewing that decision, the district court held that the procedures followed in granting respondents a hearing under Minn. St. 125.17, subd. 5, were fatally defective and the court ordered that respondents be reinstated with back pay. We reverse.

We are not called upon to determine the merits of respondents' discharge. It is enough to say they were tenured teachers in the Minneapolis school system whose positions as vocational adjust-

ment coordinators were abolished by the board of education. Pursuant to statute they sought and obtained a hearing which was conducted by George Jacobs, an attorney designated by the board to act as hearing examiner. In his summary of facts and conclusions he noted that respondents offered no evidence to show that their discharge was motivated by any consideration other than that stated by the board of education, namely, discontinuance of position to effect economies in administration.

Although the respondents took no position on substantive matters, they did object to the manner in which the hearing proceeded. First, they asserted that the hearing could not be conducted by a non-school board member. Second, they objected to having the proceedings tape-recorded rather than transcribed by a court reporter. Third, they took exception to the fact the hearing examiner administered oaths.

On the basis of the examiner's report, the board of education adopted its resolutions discharging respondents. Thereupon respondents sought and obtained review by the District Court of Hennepin County. That court held that the proceedings before the hearing examiner violated Minn. St. 125.17, subd. 5, because respondents had a right to have the hearing conducted by the entire board, and the hearing examiner had no authority to administer oaths to witnesses. The court also held that failure to provide a court reporter violated due process.

Discretionary review was granted by this court and the matter was advanced for prompt disposition because of the impact which the ruling will have on the disposition of several hundred hearings now pending in Hennepin County as a result of our decision in Head v. Special School Dist. No. 1, 296 Minn. 267, 208 N. W. 2d 294 (1973). That decision required the Minneapolis Board of Education to grant individual hearings to those teachers in the school system who requested it, who were charged with taking part in an illegal strike. Some 77 such hearings have now been held before examiners appointed by the board of education. The validity of those proceedings, as well as hearings yet to be

conducted, will be determined by our decision in the instant case.

1. *Failure of Members of the Board of Education To Be Present at the Hearing*

It is the contention of respondents that the language of Minn. St. 125.17, subds. 5, 6, 7, and 8, compels the conclusion that the legislature intended members of school boards to be present at teacher discharge hearings.[1] In the absence of express statutory

---

[1] Minn. St. 125.17, subds. 5, 6, 7, and 8, provide: "Subd. 5. The charges against a teacher shall be in writing and signed by the person making the same and then filed with the secretary or clerk of the school board having charge of the school in which the teacher is employed. Such school board before discharging or demoting a teacher shall then accord the teacher against whom such charges have been filed a full hearing and give to the teacher at least ten days' notice in writing of the time and place of such hearing; such notice may be served personally or sent by registered mail addressed to such teacher at his last known post-office address; provided, that if the charge be made by any person not in connection with the school system, the charge may be disregarded by such school board. Upon such hearing being held such school board shall hear all evidence that may be adduced in support of the charges and for the teacher's defense thereto. Either party shall have the right to have a written record of the hearing at the expense of the board and to have witnesses subpoenaed and all witnesses so subpoenaed shall be examined under oath. Any member of the school board conducting such a hearing shall have authority to issue subpoenas and to administer oaths to witnesses.

"Subd. 6. Each party appearing before the school board shall have the right to be represented by counsel, and such counsel may examine and cross-examine witnesses and present arguments.

"Subd. 7. All hearings before the school board shall be private or may be public at the decision of the teacher against whom such charges have been filed.

"Subd. 8. Such hearing must be concluded and a decision in writing, stating the grounds on which it is based, rendered within 25 days after giving of such notice. Where the hearing is before a school board the teacher may be discharged or demoted upon the affirmative vote of a majority of the members of the school board. If the charges, or any of such, are found to be true, the school board conducting the hearing shall discharge, demote, or suspend the teacher, as seems to be for the best interest of the school. No teacher shall be discharged for either of

authority permitting those proceedings to be conducted by hearing examiners, it is argued, the proceedings here conducted were invalid. The statute refers to the "school board" according teachers a full hearing; the "school board" hearing all evidence; and parties appearing before the "school board." Despite such literal language, we are of the opinion that the statute was not intended to circumscribe the discretion of a school board to delegate to hearing examiners the responsibility for assembling the facts on which the school board ultimately exercises its judgment.

Respondents cite as authority for their position Hueman v. Independent School Dist. No. 77, 243 Minn. 190, 67 N. W. 2d 38 (1954). There, however, the school board delegated to its superintendent of schools the responsibility for accepting a teacher's resignation, which we held was tantamount to performing the school board's function of discharging the teacher, a discretionary and not a ministerial activity. Here, on the other hand, the examiner simply heard the evidence and made a report to the board of education, summarizing the facts and giving his conclusions. He rendered no decision on the merits and made no recommendation with respect to how the controversy should be resolved.

The conclusion we reach is supported by the reasoning we adopted in State ex rel. Rockwell v. State Bd. of Education, 213 Minn. 184, 6 N. W. 2d 251 (1942). That case reviewed a decision of the State Board of Education dismissing the commissioner of education. There, as here, a referee was appointed to take testimony. In upholding that process we noted that this practice had been utilized without statutory authority from time immemorial by courts of equity. What we said in Rockwell is applicable:

"So, in the instant case, there was no surrender or delegation by the board of its power to remove—merely a reference to an

the causes specified in subdivision 4, clause (3), except during the school year, and then only upon charges filed at least four months before the close of the school sessions of such school year."

experienced lawyer, limited, in its scope, to the receipt and filing of detailed specifications and the taking and reporting of evidence. The weighing of evidence and of argument, the making of findings and conclusions, and all essentially judicial functions, the exercise of which resulted in relator's dismissal, were performed solely by the board." 213 Minn. 193, 6 N. W. 2d 258.

In considering the statutory language "such school board shall hear all evidence," we subscribe to the views expressed in Southern Garment Mfrs. Assn. v. Fleming, 74 App. D. C. 228, 232, 122 F. 2d 622, 626 (1941). There, the Federal Court of Appeals was construing a statute imposing on the administrator of the wage and hour division of the Department of Labor the responsibility for conducting hearings on proposed wage orders. In discussing the propriety of the administrator's appointing a presiding officer for the hearing, the court stated:

"* * * While 'the one who decides must hear', it must be remembered that 'hear' is used in the artistic sense of requiring certain procedural minima to insure an informed judgment by the one who has the responsibility of making the final decision and order.

\* \* \* \* \*

"* * * Realism negatives the idea that a subordinate is to exercise no intelligence, that he must assume the role of an automaton. All that the presiding officer did by his presence was to expedite the process. All that he did by his rulings was to expedite the hearing. He made no final conclusive decisions." [2]

Based on our precedents and on the weight of authority elsewhere, and having in mind the practical considerations faced by the Minneapolis Board of Education, we have no difficulty in approving the process which was followed by the board. The

---

[2] See, also, Quon Quon Poy v. Johnson, 273 U. S. 352, 47 S. Ct. 346, 71 L. ed. 680 (1927); Morgan v. United States, 298 U. S. 468, 481, 56 S. Ct. 906, 911, 80 L. ed. 1288, 1295 (1936); 2 Davis, Administrative Law Treatise, § 11.02.

hearing was conducted by a qualified member of the bar. There is no claim that the procedures adopted denied respondents an opportunity to present their case fully and fairly to an impartial examiner. He made no recommendations and took no part in the decision of the board. That responsibility was assumed exclusively by the board of education on the record which was made by the parties at the hearing before the examiner.

2. *The Use of a Tape Recorder in Lieu of a Court Reporter*

The trial court held that respondents were denied due process by the failure to provide a court reporter. We do not concur in that conclusion and hold that on this record the use of a tape recorder provided an adequate record on which the board of education could render its decision and the trial court could review that decision on certiorari. There were five instances of inaccuracies noted by the trial judge. However, respondents nowhere in their brief suggest that testimony which was material or relevant was omitted or distorted in transcribing such testimony from the tapes. There may be situations where the use of a tape recorder substantially prejudices the parties because of mechanical deficiencies, but this is not one of them. It is not our function to pass judgment on the relative advantages and disadvantages of substituting the electronic recording of testimony for the traditional use of court reporters. However, Rule H. 4, Rules of Commission on Judicial Standards adopted by this court on December 16, 1971, gives the commission these options: "The proceedings at the hearing shall be reported by a voice recorder or by a stenographer designated by the commission or referee." In addition we take notice of a legislative policy to approve the use of electronic recording equipment. Minn. St. 487.11, subd. 2, which applies to county courts, provides in part:

"Subd. 2. Electronic recording equipment may be used for the purposes of Laws 1971, Chapter 951 to record court proceedings in lieu of a court reporter."

Likewise, in the statute creating the office of hearing examiners, Minn. St. 15.052, subd. 5, reads, in part:

"The office of hearing examiner shall maintain a court reporter system. Unless the chief hearing examiner determines that the use of an audio magnetic recording device is more appropriate, a court reporter shall keep a record at any hearing which takes place under this chapter and may additionally be utilized as a chief hearing examiner directs."

Whatever may be the shortcomings of substituting electronic recording equipment for court reporters, unless the use of such equipment may be shown to have substantially prejudiced a party, we are not prepared to say that it is improper to utilize tape recorders either in judicial proceedings or administrative proceedings in this state.

3. *Hearing Examiners' Authority to Administer Oaths*

The trial court held that the statute authorized only board members to administer the oath to witnesses. In addition, the respondents raise the issue, not presented to the hearing examiner, that the examiner was not a notary public. What we have said with respect to the authority of the board of education to appoint a hearing examiner applies equally to the question of whether the examiner may administer an oath. This, in our opinion, is clearly a right and a duty inherent in the delegation of responsibility for conducting the hearing. Having failed to object upon determining that the hearing examiner was not a notary, respondents may not now raise that issue. However, apart from the question of waiver, we are of the opinion that Minn. St. 358.-10 permits a hearing examiner to administer an oath to witnesses whether the examiner is a notary public or not. That statute provides as follows:

"All persons holding office under any law of this state, or under the charter or ordinances of any municipal corporation thereof, including judges and clerks of election, and all committeemen, commissioners, trustees, referees, appraisers, assessors,

*and all others authorized or required by law to act or report upon any matter of fact,* shall have power to administer such oaths as they may deem necessary to the proper discharge of their respective duties." (Italics supplied.)

The order of the district court requiring the board of education to reverse its decision to terminate respondents' contracts, and directing the board to reinstate respondents with back pay, is accordingly reversed.

Reversed.

SCOTT, JUSTICE (dissenting).

The majority opinion concedes that Minn. St. 125.17 does not authorize a school board to appoint an examiner to conduct a teacher discharge hearing; nevertheless, the opinion insists that the teachers whose jobs were terminated during a time of bleak employment opportunities received all the attention they were entitled to from the board. While an administrative agency may delegate ministerial responsibilities, the use of this tactic to avoid responsibility for unpopular agency decisions is not to be encouraged, especially in cases such as this where it is difficult to distinguish ministerial and discretionary acts. In Hueman v. Independent School Dist. No. 77, 243 Minn. 190, 67 N. W. 2d 38 (1954), this court held that the delegation of responsibility for accepting a resignation was improper since the activity was not ministerial. The majority here holds that to conduct a hearing for the purpose of gathering facts for a board decision on teacher discharge is not a discretionary activity and that the teachers have no right to be heard by the board when the board fires them. I cannot support the distinction between ministerial and discretionary functions made by the majority here. While it may be true that other hearings authorized by the school board do not involve such serious consequences to the teachers involved, the school board's action in this case has disastrous lifelong consequences for these teachers. In such a case where a good reputable citizen's professional future is at stake, the statutes should be

strictly construed. I would affirm on the basis that the statute clearly entitles them to a hearing before the board itself.

YETKA, JUSTICE (dissenting).

I concur in the opinion of Mr. Justice Scott.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.